STATE OF WEST VIRGINIA

*v.*

ROGER WATSON

(No. 14073)

Decided April 4, 1980.

---

*David M. Finnerin* for P.E.

*Chauncey H. Browning*, Attorney General *Joseph C. Cometti*, Assistant Attorney General, for D.E.

MILLER, JUSTICE:

Roger Eugene Watson was convicted of unlawful assault under W. Va. Code, 61-2-9. His appeal raises issues of (1) the right of a defendant to require a pretrial identification lineup; (2) ineffective assistance of counsel for failure to raise an available defense; and (3) a number of claims of evidentiary error. We affirm the conviction.

The incident giving rise to the charges against the defendant occurred on July 3, 1976, at the Diamond Sup-

per Club in Parkersburg, Wood County. The defendant testified that upon discovering that his 17-year-old sister was employed at the supper club as a bartender, he became involved in a fight with a patron, a Mr. Pitts. The defendant admits that he struck Mr. Pitts first. Another person, a Mr. Parker, attempted to intervene, and was knocked to the floor by the defendant. Mr. Henthorn, the victim of the assault, then approached and became involved in the affray.

According to the defendant, the victim either grabbed him or approached him with his fist drawn as if to strike. The defendant then struck the victim with his fist and knocked him to the floor. The defendant states that the victim struck his head on a pool table while falling, thus sustaining a severe head injury. The defendant testified that he then picked up a pool stick that had been knocked to the floor and replaced it on a shelf.

The victim's testimony differs, as he claims he entered the area unaware that an altercation was taking place and was accosted by the defendant without warning. He stated that he was struck by the defendant with his fist and then severely injured by the defendant as a result of a blow with a pool stick.

The State presented four witnesses to the incident. Although the testimony of several of the witnesses was vague as a result of poor memory or of limited opportunity to observe, none of the witnesses contradicted the version of events as related by the victim. One of the witnesses, the defendant's sister, substantially confirmed the victim's testimony.

The jury was instructed on four possible verdicts: malicious assault, unlawful assault, assault and battery, and not guilty. Upon the return of a verdict of unlawful assault, the defendant was sentenced to a prison term of one to five years.

I

Prior to trial, the defendant moved to compel the State to test its witnesses' ability to identify the defend-

ant by means of a pretrial identification lineup. The defendant's first ground for appeal is based upon the trial court's denial of the motion.

Pretrial lineups have received considerable attention by the courts in the context of the fairness of the procedures employed when the State chooses to conduct a lineup on its own initiative.[1] The defendant here raises the issue of whether under any circumstances a defendant may compel the State to conduct a lineup before its witnesses can make an in-court identification of him.

The United States Supreme Court appears to have taken a neutral position without directly deciding the issue. In discussing the need for counsel at any pretrial corporeal identification conducted after the initiation of adversary proceedings, the Court in *Moore v. Illinois*, 434 U.S. 220, 54 L. Ed. 2d 424, 98 S.Ct. 458 (1977), stated:

> "[C]ounsel could have requested that the hearing be postponed until a lineup could be arranged at which the victim would view petitioner in a less suggestive setting. See, e.g., *United States v. Ravich*, 421 F.2d 1196, 1202-1203 (CA2), cert. denied, 400 U.S. 834, 91 S.Ct. 69, 27 L.Ed.2d 66 (1970); *Mason v. United States*, 134 U.S.App.D.C. 280, 283 n. 19, 414 F.2d 1176, 1179 n. 19 (1969).... Such requests ordinarily are addressed to the sound discretion of the court, see *United States v. Ravich, supra,* at 1203; we express no opinion as to whether the preliminary hearing court would

[1] *E.g., United States v. Wade*, 388 U.S. 218, 18 L. Ed. 2d 1149, 87 S.Ct. 1926 (1967) (providing under the Sixth Amendment the right to counsel at a post-indictment lineup); *Gilbert v. California*, 388 U.S. 263, 18 L. Ed. 2d 1178, 87 S.Ct. 1951 (1967) (allowing in-court identification subsequent to an improper lineup only if the identification is of independent origin); *Foster v. California*, 394 U.S. 440, 22 L. Ed. 2d 402, 89 S.Ct. 1127 (1969) (disallowing admission of identification testimony based on lineup conducted at any stage of the investigative process if unduly suggestive under due process standard of examining the totality of the surrounding circumstances); Annot., *Admissibility of Evidence of Lineup Identification as Affected by Allegedly Suggestive Lineup Procedures*, 39 A.L.R. 3d 487 (1971).

have been required to grant any such requests."
[434 U.S. at 230-31 n. 5, 54 L. Ed. 2d at 435 n. 5,
98 S.Ct. at 465-66 n. 5].

The California Supreme Court explored the issue in
depth in *Evans v. Superior Court,* 11 Cal. 3d 617, 522
P.2d 681, 114 Cal. Rptr. 121 (1974), and noted that as a
matter of criminal discovery, the state is empowered to
compel a lineup to be conducted and to utilize the evi-
dence it produces. The California Court further noted
that, as a general matter, criminal discovery is required
to be a "two-way street," *Wardius v. Oregon,* 412 U.S.
470, 37 L. Ed. 2d 82, 93 S.Ct. 2208 (1973). Thus, the court
concluded that:

"Because the People are in a position to compel a
lineup and utilize what favorable evidence is de-
rived therefrom, fairness requires that the ac-
cused be given a reciprocal right to discover and
utilize contrary evidence. . . ." [11 Cal. 3d at 623,
522 P.2d at 685, 114 Cal. Rptr. at 125].

The court declined, however, to extend the defendant's
right to compel an identification lineup to all circum-
stances as a matter of right, independent of any show-
ing of appropriateness or need. The court afforded the
right to a lineup "only when eyewitness identification is
shown to be in material issue and there exists a reason-
able likelihood of a mistaken identification which a line-
up would tend to resolve." 11 Cal. 3d at 625, 522 P.2d at
686, 114 Cal. Rptr. at 126, and further stated:

"The questions whether eyewitness identification
is a material issue and whether fundamental
fairness requires a lineup in a particular case
are inquiries which necessarily rest for determi-
nation within the broad discretion of the magis-
trate or trial judge. (See United States v. Mac-
Donald (9th Cir. 1971) 441 F.2d 259, cert. den. 404
U.S. 840, 92 S.Ct. 133, 30 L.Ed.2d 74; United
States v. Ravich (2d Cir. 1970) 421 F.2d 1196,
1202-1203). We do not hold, accordingly, that in
every case where there has not been a pretrial
lineup the accused may, on demand, compel the
People to arrange for one. Rather, as in all due

process determinations, the resolution here to be made is one which must be arrived at after consideration not only of the benefits to be derived by the accused and the reasonableness of his request but also after considering the burden to be imposed on the prosecution, the police, the court and the witnesses." [11 Cal.3d at 625, 522 P.2d at 686, 114 Cal. Rptr. at 126].

The federal and state courts which have ruled upon the issue appear to be in general agreement with the *Evans'* standard that the granting of a defendant's motion for a pretrial identification lineup lies within the discretion of the trial judge. *United States v. Estremera*, 531 F.2d 1103 (2d Cir. 1976), *cert. denied*, 425 U.S. 979, 48 L. Ed. 2d 804, 96 S.Ct. 2184; *United States v. King*, 461 F.2d 152 (D.C. Cir. 1972); *United States v. Williams*, 436 F.2d 1166 (9th Cir. 1970), *cert. denied*, 402 U.S. 912, 28 L. Ed. 2d 654, 91 S.Ct. 1392 (1971); *United States v. Ravich*, 421 F.2d 1196 (2d Cir. 1970), *cert. denied*, 400 U.S. 834, 27 L. Ed. 2d 66, 91 S.Ct. 69; *State v. Ferguson*, 120 Ariz. 345, 586 P.2d 190 (1978); *Berryman v. United States*, 378 A.2d 1317 (D.C. App. 1977); *State v. Porter*, 223 Kan. 114, 574 P.2d 187 (1977); *State v. Boettcher*, 338 So.2d 1356 (La. 1976).

In *United States v. Ravich*, 421 F.2d 1196 (2d Cir. 1970), *cert. denied*, 400 U.S. 834, 27 L. Ed. 2d 66, 91 S.Ct. 69, the following guidelines for granting a pretrial identification lineup at the request of the defendant were suggested: (1) the length of time between the crime or arrest and the request; (2) the possibility that the defendant may have altered his appearance; (3) the extent of inconvenience to prosecution witnesses; (4) the possibility that revealing the identity of the prosecution witnesses would subject them to intimidation; (5) the propriety of other identification procedures used by the prosecution; and (6) the degree of doubt concerning the identification.

Although the courts which have discussed these standards have not drawn the connection to the standards for admissibility of identification testimony following suggestive procedures, it is clear that the two are close-

ly related. In *State v. Pratt*, ___ W.Va. ___, 244 S.E.2d 227 (1978), we recognized, as have other courts, that where the defendant claims that an identification witness has based his identification on pretrial identification procedures that are allegedly constitutionally infirm, the defendant is entitled to an *in camera* hearing to challenge identification.

In determining whether pretrial identification was impermissively suggestive, we have adopted the criteria set out in *Neil v. Biggers*, 409 U.S. 188, 34 L. Ed. 2d 401, 93 S.Ct. 375 (1972), and reaffirmed in *Manson v. Brathwaite*, 432 U.S. 98, 53 L. Ed. 2d 140, 97 S.Ct. 2243 (1977). In *State v. Williams*, ___ W.Va. ___, 249 S.E.2d 752 (1978), we confirmed the elements of the *Neil* test, which we had adopted in our earlier cases of *State v. Kennedy*, ___ W.Va. ___, 249 S.E.2d 188 (1978), and *State v. Casdorph*, ___ W.Va. ___, 230 S.E.2d 476 (1976). These elements tend to parallel those set out in *United States v. Ravich*, *supra*, and center on the witness' observations at the time of the crime, *viz.*, (1) the opportunity to view the defendant; (2) the witness' degree of attention; (3) the accuracy of his description of the defendant; (4) the witness' level of certainty; and (5) the time between the crime and subsequent confrontation with the defendant.

We decline to adopt the view of the California Court and those that follow it which appear to regard the right to a defendant-compelled lineup as a consideration separate from the normal identification questions. In our view, a more appropriate solution is to follow the *in camera* hearing requirement of *State v. Pratt*, where the defendant raises the issue of suggestive identification procedures. The trial court should then apply the identification test set out in *State v. Williams*, *supra*. If the trial court finds the test results to be inconclusive such that there is a distinct possibility of misidentification, it may direct that the defendant be accorded a lineup to determine if the State's witness can identify him.[2]

_____

[2] Any such lineup motion should be made sufficiently in advance of trial to enable arrangements for it in the event it is granted.

In the present case, the trial court was not confronted with a bona fide identification issue. The defendant's sister, a State witness, was present throughout the altercation and identified the defendant, as did the police officers who arrested him at the club. The fact that the victim was uncertain in his identification does not trigger a bona fide identification issue where the State relies on other competent identification witnesses. The trial court was clearly correct in refusing defendant's motion for independent or lineup identification.

## II

The defendant's second ground for appeal is a claim of ineffective assistance of counsel based upon defense counsel's failure to argue the issue of self-defense.

Our standard for determining ineffective assistance of counsel is set out in *State v. Thomas,* ___ W.Va. ___, 203 S.E.2d 445 (1974), which provides that effectiveness will be measured by whether defense counsel "exhibited the normal and customary degree of skill possessed by attorneys who are reasonably knowledgeable of criminal law." [203 S.E.2d at 461]. In establishing this rule, *Thomas* qualified its application by holding in Syllabus Point 21 that:

> "Where a counsel's performance, attacked as ineffective, arises from occurrences involving strategy, tactics and arguable courses of action, his conduct will be deemed effectively assistive of his client's interests, unless no reasonably qualified defense attorney would have so acted in the defense of an accused."

This broad allowance for an attorney's choice of trial strategy has been uniformly applied to his selection of available defenses. *E.g., United States v. Blue Thunder,* 604 F.2d 550 (8th Cir. 1979); *People v. Pope,* 23 Cal.3d 412, 590 P.2d 859, 152 Cal. Rptr. 732 (1979); *Commonwealth v.*

---

The defendant can waive his right to be present at the *in camera* hearing on the identification issue prior to the actual lineup procedures.

*Glass*, 405 A.2d 1236 (Pa. 1979); *State ex rel. Postelwaite v. Bechtold*, ___ W.Va. ___, 212 S.E.2d 69 (1975), *cert. denied*, 424 U.S. 909, 47 L. Ed. 2d 312, 96 S.Ct. 1103. *See* Finer, *Ineffective Assistance of Counsel*, 58 Cornell L. Rev. 1077, 1100-06 (1973); Note, *Ineffective Representation as a Basis for Relief from Conviction: Principles for Appellate Review*, 13 Colum. J.L. & Soc. Prob. 1, 11, 19–20 (1977); Annot., *Modern Status of Rule as to Test in Federal Court of Effective Representation by Counsel*, 26 A.L.R. Fed. 218, § 10(a) (1976).

There is no precise formula guiding a determination of when the failure to raise an available defense will constitute ineffective assistance of counsel. The absence of clear standards may be unavoidable, since the strength of an available defense in each particular circumstance may vary as broadly as the factual occurrences that give rise to a criminal prosecution. Thus, a determination of ineffective assistance of counsel for failure to raise an available defense involves a case-by-case examination of the particular facts in order that the issues those facts fairly raise can be compared with the defenses actually presented by counsel. *See* Annot., *Modern Status of Rule as to Test in Federal Court of Effective Representation by Counsel*, 26 A.L.R. Fed. 218,§ 10(a) (1976).

Applying the trial tactics test set forth in *Thomas, supra*, ineffective assistance for failure to raise an available defense will be found if "no reasonably qualifed defense attorney would have so acted in the defense of an accused." [203 S.E.2d at 461].

An examination of the record in the present case reveals two occurrences where the possibility of self-defense is raised. Both are contained in the defendant's testimony. The first follows the defendant's description of his participation in the altercation at which time he stated that the victim, until then a nonparticipant in the fight, "had come in and he grabbed me and I hit him up by the pool table." The second suggestion of self-defense is in the same narration repeated on cross-

examination where the defendant, in response to the question "Did Mr. Henthorn [the victim] try to grab you?", stated: "He started to. That's when he started to hit me and I hit him first."

Counterbalancing these statements was the testimony of all the other witnesses to the incident, including the defendant's sister, that the defendant was the aggressor in all of the fighting that occurred. Ordinarily, self-defense is not available to the aggressor in an affray who precipitates it without legal justification. *Jordan v. Commonwealth*, ___ Va. ___, 252 S.E.2d 323 (1979); *Dawkins v. Commonwealth*, 186 Va. 55, 41 S.E.2d 500 (1947); 6 Am. Jur. 2d *Assault and Battery* § 77 (1963); W. LaFave & A. Scott, *Handbook on Criminal Law*, 394 (1972).

We reject the claim of ineffective assistance of counsel on several grounds. First, it is obvious that the self-defense theory was weak at best, and it was well within the tactical decision of competent counsel not to urge a defense that was of questionable merit and which might have prejudiced his case before the jury. Most experienced trial counsel are aware of the hazards of asserting meritless defenses which may jeopardize other phases or defenses in the case. Jurors essentially believe they are finders of the factual truth of a case and it is risky for any attorney to present to them dubious factual theories.

Moreover, any assertion of ineffective assistance of counsel will be examined not only from the standpoint of the particular error asserted, but from the broader view of counsel's conduct of the entire trial. Here, there is no claim of any other failure on the part of trial counsel. Defense counsel was able to persuade the jury to find the lesser crime of unlawful, as distinguished from malicious, assault—not an inconsiderable achievement in light of the strength of the State's case.

Finally, we believe that one of the standards set in Syllabus Point 3 of *State v. Sims*, ___ W.Va. ___, 248 S.E.2d 834 (1978), bears some analogy in its requirement

that "the incompetency must relate to a matter which would have substantially affected the fact-finding process." While *Sims* dealt with ineffective assistance of counsel on a guilty plea, it is apparent that any charge of ineffectiveness of trial counsel must ultimately relate to a matter which would have affected the jury decision.

## III

Defendant claims that a number of evidentiary errors were committed. He urges that the police officer's statement, that when he made the arrest the defendant "didn't offer to say anything," violates the rule in *State v. Boyd*, ___ W.Va. ___, 233 S.E.2d 710 (1977).

*Boyd* held that it was constitutionally impermissible to cross-examine the defendant or to comment in regard to the fact that the defendant made no pretrial statement, since he has the constitutional right against self-incrimination. Here, however, *Boyd* is not applicable, because the defendant was not cross-examined about his pretrial silence. Furthermore, the police officer's remarks were made in the context of describing the physical appearance of the defendant at the time the officer came to the club to arrest him. There was no attempt to convey to the jury the impression that the defendant was exercising his right against self-incrimination.

A second error is claimed on a cross-examination question asked the defendant in which several discrepancies of fact were pointed out between his testimony and that of certain State witnesses. He was asked if their testimony was "incorrect." We recently discussed this cross-examination technique at some length in *State v. Atkins*, ___ W.Va. ___, 261 S.E.2d 55, 65 (1979), and concluded:

> "[I]t is not improper on cross-examination to direct a witness to specific previous testimony of another witness and ask the witness whether he agrees or disagrees with such testimony. We also conclude that it is objectionable on cross-examination to require a witness to state whether another witness' testimony is true or false, since this is the ultimate question that a jury

must decide. We do, however, state that the failure to sustain an objection to such improper questioning will not necessarily result in error unless the technique has been used so pervasively and abusively in the cross-examination as to substantially distort the witness' testimony on critical trial issues." [261 S.E.2d at 65].

Here, since the question asked only involved whether the compared facts were correct or incorrect, there is no error. Further, the record reveals no abuse of the technique.

The defendant finally asserts that the state introduced evidence that at the time of the affray he might have been intoxicated. Furthermore, the State's witnesses in describing the affray stated that two other persons were assaulted by the defendant. The contention is made that this testimony represents evidence of other crimes, which is barred by *State v. Thomas*, ____ W.Va. ____, 203 S.E.2d 445, 455 (1974), and our earlier cases. Here, it was virtually impossible for the state to isolate what occurred immediately before the assault on Mr. Henthorn. In *State v. Frasher*, ____ W.Va. ____, 265 S.E.2d 43 (1980), we discussed the other crime question and quoted with approval *Kugzruk v. State*, 436 P.2d 962, 967 (Alaska 1968), which in turn incorporated language from *United States v. Wall*, 225 F.2d 905, 907 (7th Cir. 1955), *cert. denied*, 350 U.S. 935, 100 L. Ed. 816, 76 S.Ct. 307 (1956):

"However, there are many well established exceptions to this rule [prohibiting evidence of other crimes] . . . to the end that all relevant facts and circumstances tending to establish any of the constituent elements of the crime of which the defendant is accused may be made to appear. Thus, evidence of other criminal acts has been held admissible by this court when they are so blended or connected with the one on trial as that proof of one incidentally involves the other; or explains the circumstances thereof; or tends logically to prove any element of the crime charged. Such evidence is admissible if it is . . . so

associated that proof of one tends to prove the other. . . ."

We decline to address the intoxication point, since no objection was made to the testimony in the trial court. *State v. Burton*, ____ W.Va. ____, 254 S.E.2d 129, 140 (1979).

In consequence, we do not find any reversible error in connection with the evidentiary points, and finding none in regard to the other assignments, and for the reasons set out above, we affirm the defendant's conviction.

*Affirmed.*