346 S.E.2d 745

**STATE of West Virginia**

v.

**Billy Ray SEXTON.**

**No. 16532.**

Supreme Court of Appeals of West Virginia.

Dec. 11, 1985.

Dissenting Opinion June 26, 1986.

William D. Highland, W.V. Legal Services Plan, for appellant.

Atty. Gen. Office, Mary Rich Maloy, Asst. Atty. Gen., Charleston, for appellee.

PER CURIAM:

The appellant, Billy Ray Sexton, was convicted of grand larceny in the Circuit Court of Raleigh County and was sentenced to an indeterminate term of from one to ten years in the penitentiary. Following denial of his motion for a new trial, he prosecuted this appeal.

The appellant was indicted in Raleigh County for the burglary of the home of Rabbi Isadore Wein and the theft therefrom of several watches and assorted jewelry and coins, having an approximate value of $12,000. The indictment alleged that the crimes took place sometime between September 10, 1982 and October 12, 1982. The state's evidence at trial showed that the jewelry and watches were taken from a dresser drawer in Rabbi and Mrs. Wein's bedroom on the second floor of the house and the coins from a den on the first floor. Rabbi Wein testified that when he discovered the missing items on October 10, 1982, he found missing from the top drawer of his chest numerous rings, tie tacks, cuff links, a stick pin, and a small antique gun. Although their boxes remained, a Bulova watch and a diamond Helbros watch were

also missing. Missing from a second chest of drawers in the same room were two Rolex watches. Valuable coins and stamps were taken from the Weins' den but nothing else in the house was taken, including Mrs. Wein's jewelry.

The appellant had been employed by the Weins to do miscellaneous jobs around their house and take care of an apartment building they owned since approximately 1974. Rabbi Wein testified that the appellant's work at their house included transporting the Weins' maid to and from work, assisting in the moving of heavy furniture, installing storm windows and mowing the lawn. The rabbi testified that the appellant had never helped carry suitcases from the bedroom, had never helped in the packing of the suitcases, and to the best of his knowledge, never had reason to go into the bedroom. The rabbi further testified that when he discovered the missing items, the appellant was at the house and when told about the robbery stated: "I haven't got any keys." The rabbi testified that he had taken the appellant's keys to the house several years before after a separate incident.

The rabbi was questioned about his and Mrs. Wein's traveling habits. He testified that they both went to Florida in October every year. Mrs. Wein would remain there for the remainder of the winter; he would return home after several days and make frequent trips back to Florida throughout the winter.

Mrs. Wein also testified on behalf of the state. She stated that the appellant had access to and was often in the house but that his duties never required him to go to the upstairs of the house where the Weins' bedroom was located. He was, in fact, told never to go up there. Mrs. Wein denied that the appellant ever helped pack suitcases; he merely took the suitcases from the first floor of the house and placed them in the car. Mrs. Wein testified that she did the packing for trips without any help from the appellant or the maid. Finally, Mrs. Wein testified that the maid was allowed to go upstairs in the house to vacuum and dust and that the only time the appellant

may have been in the bedroom was when he and his wife washed windows several years before. Mrs. Wein's memory was not clear on this point.

Laura McComas, the Weins' maid, testified that she had been employed by the Weins for thirty-one years; that neither she nor the appellant helped pack clothes inside a suitcase for the Weins; that the appellant and his wife had washed windows in the Weins' bedroom several years before; and that although the appellant would on occasion carry heavy bags from the bedroom to the car, Mrs. Wein was with him the entire time he was in the bedroom.

Rabbi Wein's insurance agent and two of the agent's employees were called to testify for the state. Basically their testimony was that they were acquainted with the appellant through his job as a custodian of the building in which their office was located; that sometime around September 27, 1982 and October 1, 1982, the appellant came into the insurance office trying to sell a large, gold watch for $75; and that the appellant had previously tried to sell certain items to them but the items were inexpensive things such as candy and fruit. None of the employees could identify the watch peddled by the appellant as one of the missing watches.

Finally, the state elicited testimony from Beckley police officers who investigated the theft at the Wein residence. Officer Tommy Purdy testified that it was not a typical burglary in that the house was in order and nothing was disarrayed. It appeared that the burglar had gained access to the house through a basement window that had been raised. A fingerprint specialist identified fingerprints on the Bulova watch box as being those of the appellant. No prints that had been lifted from other surfaces were useful, *i.e.*, they were smudged and could not be identified.

The appellant testified in his own behalf that he had been hired by the Weins in 1971 to perform maintenance in an office building they owned and to transport their maid to and from work at their residence. In addition, he performed miscellaneous

tasks for Mrs. Wein around the house. The appellant testified that his duties took him throughout the house and that those duties included helping the Weins pack for trips, draining steam pipe radiators on both the first and second floor of the house, carrying luggage from the bedroom to the first floor, cleaning windows, vacuuming, dusting, and moving furniture in every room of the house. The appellant testified that on occasion when he helped with the packing he would have to close the suitcases before he carried them downstairs. In the process of closing them, he at times touched his hand to jewelry boxes that were in the suitcase.

The appellant also testified that he purchased the watch he had tried to sell from a Mr. Walker at the Sportsman Pool Hall. He denied taking any of the missing items and disagreed with Rabbi Wein's testimony that the basement windows could be entered without using force.

At the conclusion of the testimony, the jury returned a verdict finding the appellant guilty of grand larceny and not guilty of burglary in the daytime. The appellant contends that the state's evidence was insufficient to sustain the grand larceny conviction. He asserts that under *State v. Noe*, 160 W.Va. 10, 230 S.E.2d 826 (1976), his conviction must be set aside. In Syllabus Point 1 of *Noe*, we held that fingerprint evidence, being circumstantial evidence, will not sustain a conviction where it is the "only evidence linking defendant to the commission of the crime, creates a mere suspicion of guilt, does not prove the actual commission of the crime charged and fails to prove guilt to the exclusion of every reasonable hypothesis of innocence."

■ Our holding in *State v. Noe, supra*, is not applicable to the case before us where the evidence of appellant's fingerprints on the Bulova watch box was not the only evidence linking the appellant to the commission of the crime. The state's evidence, which the jury was entitled to believe, was that the appellant had never had the opportunity to touch the watch box on a purely innocent occasion; that any time the appellant had been in the bedroom from which the items were taken he had been accompanied by Mrs. Wein; and that upon hearing of the robbery the appellant immediately left the Wein residence and did not return. In addition, there was evidence that he tried to sell a gold watch around the period when the items were taken and that the person who took the items had entered the house without damaging anything and had disturbed nothing during the theft.

In Syllabus Point 1 of *State v. Starkey*, 161 W.Va. 517, 244 S.E.2d 219 (1978), we held:

In a criminal case, a verdict of guilt will not be set aside on the ground that it is contrary to the evidence, where the state's evidence is sufficient to convince impartial minds of the guilt of the defendant beyond a reasonable doubt. The evidence is to be viewed in the light most favorable to the prosecution. To warrant interference with a verdict of guilt on the ground of insufficiency of evidence, the court must be convinced that the evidence was manifestly inadequate and that consequent injustice has been done.

We are not convinced that the evidence in this case was manifestly inadequate. The state's evidence, if believed by the jury, was sufficient to support a grand larceny conviction.

■ The appellant contends that the verdict form should have contained the lesser included offense of petit larceny because the evidence showed that appellant's fingerprints appeared on only the Bulova watch box and the Bulova watch was worth less than $200. The defense at trial consisted solely of the appellant's testimony which was that he did not take any of the valuables missing from the Wein residence. The evidence offered by the state tended to prove that the appellant committed the larceny of all the items stolen. In Syllabus Point 2 of *State v. Neider*, 170 W.Va. 662, 295 S.E.2d 902 (1982), we held: "Where there is no evidentiary dispute or insufficiency on the elements of the greater offense which are different from the elements of the lesser included offense, then the defendant is not entitled to a lesser

included offense instruction." There was no evidence in this case to support a verdict of a lesser included offense. The state's evidence showed that all of the items, except the coin and stamp collections, were in close proximity to each other. Two of the watches and the jewelry were in a drawer in one chest in the bedroom; the two Rolex watches were in a drawer in another chest in the same room. Logic dictates that one burglar did not come into the room and steal the Bulova watch and leave the two valuable watches and jewelry for a second burglar. Furthermore, the appellant did not assert that he took only the Bulova watch. He denied taking anything. "Instructions must be based upon the evidence and an instruction which is not supported by the evidence should not be given." Syllabus Point 4, *State v. Collins*, 154 W.Va. 771, 180 S.E.2d 54 (1971).

Accordingly, the judgment of the Circuit Court of Raleigh County is affirmed.

Affirmed.

McGRAW, Justice, dissenting:

In Syllabus Point 1 of *State v. Noe*, 160 W.Va. 10, 230 S.E.2d 826 (1976), this Court held:

> Fingerprint evidence, being circumstantial evidence, will not sustain a conviction in a criminal case when such evidence, as presented, is the only evidence linking defendant to the commission of the crime, creates a mere suspicion of guilt, does not prove the actual commission of the crime charged and fails to prove guilt to the exclusion of every reasonable hypothesis of innocence.

The defendant in the instant proceeding, as in *Noe*, offered evidence explaining the appearance of his fingerprints at the scene of the crime. The majority's "other" evidence offered to establish the defendant's guilt is more conjecture than actual evidence of guilt. The defendant established that he had access to the bedroom, a point not contested by the victims. Although the victims testified the defendant was accompanied by Mrs. Wein at any time he was in the bedroom, it must be remembered that he had been employed by the victims for eight years and that casual movement about the premises in connection with his duties over that period would have gone relatively unnoticed. The fact that the defendant left the premises upon hearing of the robbery also reveals little in the absence of testimony that he did so without finishing the task for which he was summoned. Likewise, the fact that no breaking occurred is irrelevant, particularly in light of the fact that the defendant possessed no keys to the house. On the one hand, the victims testified that the defendant did not have access to the bedroom, and yet, on the other hand, asserted that he removed items stored there. Obviously, these two assertions are mutually exclusive. Finally, the description of the gold watch the defendant attempted to sell was insufficient to establish that it was one of the watches stolen from the Wein residence. The defendant offered evidence to explain his possession of the gold watch, and the insurance company employees admitted that the defendant often had attempted to sell items to them, such as candy and fruit. In the instant proceeding, as in *Noe*, the evidence presented linking the defendant to the commission of the crime created only a mere suspicion of guilt, did not prove the actual commission of the crime charged, and failed to prove guilt to the exclusion of every reasonable hypothesis of innocence. Accordingly, I dissent from the affirmance of the defendant's conviction.

I am authorized to say that MILLER, C.J., joins herein.