647 S.E.2d 725

**STATE of West Virginia, Petitioner Below, Appellee,**

v.

**Eric Delbert JETT, Defendant Below, Appellant.**

**No. 33198.**

Supreme Court of Appeals of West Virginia.

Submitted: April 3, 2007.

Decided: May 17, 2007.

---

Darrell V. McGraw, Jr., Esq., Attorney General, Ronald R. Brown, Esq., Assistant Attorney General, Charleston, for the State.

Crystal L. Walden, Esq., Public Defender Corporation, Charleston, for Eric Delbert Jett.

## PER CURIAM.

The appellant and defendant below, Eric Delbert Jett, appeals his January 27, 2005, conviction in the Circuit Court of Kanawha County of operating or attempting to operate a clandestine drug laboratory pursuant to W.Va.Code § 60A–4–411 (2003). The appellant alleges that the circuit court committed reversible error by refusing to give the appellant's requested jury instruction defining the term "attempt." After careful consideration, we affirm the appellant's conviction.

1. The appellant ultimately pled guilty on the Ohio charge to illegal possession of chemicals for

## I.

## FACTS

The appellant was charged with operating or attempting to operate a clandestine drug laboratory under W.Va.Code § 60A–4–411 (2003), which provides:

(a) Any person who operates or attempts to operate a clandestine drug laboratory is guilty of a felony and, upon conviction, shall be confined in a state correctional facility for not less than two years nor more than ten years or fined not less than five thousand dollars nor more than twenty-five thousand dollars, or both.

(b) For purposes of this section, a "clandestine drug laboratory" means any property, real or personal, on or in which a person assembles any chemicals or equipment or combination thereof for the purpose of manufacturing methamphetamine, methylenedioxymethamphetamine or lysergic acid diethylamide in violation of the provisions of section four hundred one [§ 60A–4–401] of this article.

(c) Any person convicted of a violation of subsection (a) of this section shall be responsible for all reasonable costs, if any, associated with remediation of the site of the clandestine drug laboratory.

The State adduced evidence at the appellant's trial that on June 21, 2004, the appellant and his friend, Timothy Wycoff, left the appellant's home in Kanawha County. The next day Wycoff and the appellant were arrested in Marietta, Ohio. Wycoff was arrested for shoplifting three packs of Dimetapp pills which contain pseudoephedrine, a chemical precursor in the manufacture of methamphetamine. The appellant was arrested for complicity to manufacture methamphetamine after a search of his vehicle revealed two bottles of liquid Heet, which is a fuel additive, Red Devil lye, acetone, liquid fire, plastic tubing, coffee filters, and salt.[1] The arresting officer testified in the appellant's trial in the instant case that the materials and substances recovered from the appellant's ve-

the manufacture of methamphetamine.

hicle in Ohio are precursors for the manufacture of methamphetamine. He further testified that, after he read the appellant his *Miranda* rights, the appellant admitted that he used methamphetamine the previous day; that he participated in 10 to 15 methamphetamine "cooks" in Roane County, West Virginia, and that he attempted to cook methamphetamine at his residence.

Also on June 22, 2004, the appellant's wife and her brother-in-law discovered what appeared to them to be a methamphetamine lab in the cellar of the appellant's house. The next day the appellant's wife's brother-in-law notified the police, and the appellant's wife consented to a search of the cellar. The police officer who searched the cellar indicated that upon opening the door to the cellar he immediately detected the strong odor of methamphetamine. He further testified that he discovered what he characterized as "a dismantled methamphetamine lab" locked in a trunk. In addition, he found a one-gallon can of E–Z acetone, four empty bottles of liquid Heet, a four-pound box of Morton salt, two empty 16–ounce bottles of hydrogen peroxide, an empty one-gallon jug of iodine tincture, more than 100 match boxes with the striker plates removed, tubing, an empty one-gallon jug of distilled water, a 20–ounce soft drink bottle with salt residue on the bottom, and coffee filters with dark chemical stains on them. According to the police officer, each of these items is used in the manufacture of methamphetamine. Further, a forensic drug analyst from the State Police forensic laboratory testified that substances found in the trunk were necessary components of a clandestine drug laboratory and it appeared to her that initial steps had been taken to produce methamphetamine.

At the close of the evidence, the trial court instructed the jury, in part, as follows:

Before [the appellant] can be found guilty of the offense of operating or attempting to operate a clandestine drug laboratory ... the State must overcome his presumption of innocence and prove to your satisfaction beyond a reasonable doubt that: (1) [the appellant], (2) in Kanawha County, West Virginia, (3) on or about the 23rd day of June, 2004, (4) did operate or attempt to operate (5) a clandestine drug laboratory (6) in which he did assemble (7) chemicals or equipment or a combination thereof (8) in or on any real or personal property (9) for the purpose of manufacturing methamphetamine. If after impartially considering all the evidence in this case, each member of the jury is convinced beyond a reasonable doubt of each of these elements of operating or attempting to operate a clandestine drug laboratory, then you must find the defendant guilty of operating or attempting to operate a clandestine drug laboratory. If you have a reasonable doubt as to any one or more of these elements of operating or attempting to operate a clandestine drug laboratory, then you cannot return a verdict of guilty of operating or attempting to operate a clandestine drug laboratory, and you must find a verdict of not guilty.

The trial court refused the appellant's proffered instruction after finding that it was not an accurate statement of the law. The appellant's proffered instruction provided:

The offense charged in this indictment is the operation or attempted operation of a clandestine drug laboratory. A "clandestine drug laboratory" means any property, real or personal, on or in which a person assembles any chemicals or equipment or combination thereof for the purpose of manufacturing methamphetamine.

The State must prove beyond a reasonable doubt that the defendant operated or attempted to operate a clandestine drug laboratory. You are instructed that the mere assembly of any chemicals or equipment for the purpose of manufacturing methamphetamine does not constitute the crime of operation of a clandestine drug laboratory. If you find that the Defendant merely possessed or assembled chemicals or equipment or a combination thereof on or in any property, real or personal, for the purpose of manufacturing methamphetamine, you must find the Defendant not guilty.

Likewise, the mere assembly of any chemicals or equipment for the purpose of manufacturing methamphetamine does not constitute the crime of attempt to operate

a clandestine drug laboratory. In order to constitute the crime of attempt, two requirements must be met: (1) a specific intent to commit the underlying substantive crime; and (2) an overt act toward the commission of that crime, which falls short of completing the underlying crime.

You are instructed that if you find the Defendant assembled chemicals or equipment or a combination thereof on or in any property, real or personal, for the purpose of manufacturing methamphetamine, but that the Defendant committed no overt act in the manufacturing process itself, you must find the Defendant not guilty.

The jury found the appellant guilty of operating or attempting to operate a clandestine drug laboratory. By order of December 2, 2005, the trial court sentenced the appellant to an indeterminate term of not less than two years nor more than ten years.

## II.

### STANDARD OF REVIEW

■ We are called upon in this case to determine whether the circuit court erred in refusing to give the appellant's requested instruction. This Court previously has set forth the applicable standards of review as follows:

> A trial court's instructions to the jury must be a correct statement of the law and supported by the evidence. Jury instructions are reviewed by determining whether the charge, reviewed as a whole, sufficiently instructed the jury so they understood the issues involved and were not mislead by the law. A jury instruction cannot be dissected on appeal; instead, the entire instruction is looked at when determining its accuracy. A trial court, therefore, has broad discretion in formulating its charge to the jury, as long as the charge accurately reflects the law. Deference is given to a trial court's discretion concerning the specific wording of the instruction, and the precise extent and character of any specific instruction will be reviewed only for an abuse of discretion.

Syllabus Point 4, *State v. Guthrie*, 194 W.Va. 657, 461 S.E.2d 163 (1995). Further, "[a]s a general rule, the refusal to give a requested jury instruction is reviewed for an abuse of discretion. By contrast, the question of whether a jury was properly instructed is a question of law, and the review is *de novo*." Syllabus Point 1, *State v. Hinkle*, 200 W.Va. 280, 489 S.E.2d 257 (1996). With these principles to guide us, we now address the appellant's assignment of error.

## III.

### DISCUSSION

■ The sole assignment of error raised by the appellant is that the trial court committed reversible error by refusing to give the appellant's requested instruction defining "attempt." In support of this assigned error, the appellant first argues that the word "attempt" is a term of art that must be defined for the jury. According to the appellant, absent the proper definition of "attempt," the jury could not properly hold the State to its burden of proving every essential element beyond a reasonable doubt.

■ Under our law, "[a] term which is widely used and which is readily comprehensible to the average person without further definition or refinement need not have a defining instruction." Syllabus Point 2, *State v. Bartlett*, 177 W.Va. 663, 355 S.E.2d 913 (1987). We believe that "attempt" is such a term. In *State v. Schmiedt*, 525 N.W.2d 253 (S.D.1994), the Supreme Court of South Dakota found that the trial court did not err in refusing to define "attempt" in a jury instruction where the defendant was on trial for aggravated assault of a police officer which, under South Dakota law, is an "attempt[ ] by physical menace with a deadly weapon to put another in fear of imminent serious bodily injury." 525 N.W.2d at 255. The court explained that,

> Specific words used in instructions which are self-explanatory and readily understood need not be specifically defined. *State v. Henry*, 87 S.D. 454, 210 N.W.2d 169 (1973). The word "attempt" has been held to be such a word:
>
> > According to Webster's Third New International Dictionary, the word "attempt" means, "to make an effort to do,

accomplish, solve, or effect * * *." That one must intend to do that which one is attempting is implicit in the foregoing definition. (*See* R. Perkins, Perkins on Criminal Law 573 (2d ed.1969).) We feel that the jury so understood the use of the word "attempt" in the instructions given. Where the terms employed in an instruction are of general use, and are not technical terms or words of art, they need not be defined, in the absence of anything in the charge to obscure their meaning. (*People v. Monroe*, 32 Ill.App.3d 482, 335 N.E.2d 783 (3d Dist. 1975).)

*People v. Miner*, 46 Ill.App.3d 273, 4 Ill. Dec. 766, 773–74, 360 N.E.2d 1141, 1148–1149 (1977). *Accord, State v. King*, 287 N.C. 645, 215 S.E.2d 540 (1975) (word "attempted" is so well understood by the average person that it would have been a waste of time to define it); *State v. McNeely*, 244 N.C. 737, 94 S.E.2d 853 (1956) (word "attempt" is clearly understandable).

*Schmiedt*, 525 N.W.2d at 255–56. Likewise, in *U.S. v. Gonzalez*, 940 F.2d 1413 (11th Cir.1991), the United States Court of Appeals for the Eleventh Circuit found no plain error in the trial court's failure to define "attempt" in its jury instructions. In that case, the defendants were convicted of numerous offenses relating to trafficking in marijuana based on evidence of several attempts to import marijuana into the United States. According to the court,

First, it is well settled that terms which are within the common understanding of the jury need not be defined in the jury instructions. "Attempt" is not an overly technical or ambiguous term, nor is it beyond the common understanding of the jury. It is unlikely that the court's failure to define "attempt" confused the jury or resulted in a grave miscarriage of justice.

*Gonzalez*, 940 F.2d at 1427(citations omitted). *See also State v. Jones*, 227 N.C. 402, 42 S.E.2d 465, 467 (1947) (stating that "[t]he word 'attempt' is one of common usage").

In the instant case, we find that the word "attempt" as used by the trial court in its instruction to the jury is a common term which is widely used and generally understandable to the average person. Thus, we believe it is unlikely that the jury below was confused by the term so as to affect its verdict against the appellant. Therefore, we conclude that the trial court's failure to provide a definition for the term in its charge to the jury was not error.

■ The appellant also contends that the instruction given by the trial court had the potential to mislead the jury into believing that the mere assembly of chemicals and equipment on real or personal property for the purpose of manufacturing methamphetamine was sufficient for conviction.

■ Generally, "[a]n instruction for a statutory offense is sufficient if it adopts and follows the language of the statute, or uses substantially equivalent language and plainly informs the jury of the particular offense for which the defendant is charged." Syllabus Point 8, *State v. Slie*, 158 W.Va. 672, 213 S.E.2d 109 (1975). As set forth above, the trial court below instructed the jury that before the appellant can be found guilty of the crime charged, the State must prove beyond a reasonable doubt that (1) the appellant, (2) in Kanawha County, West Virginia, (3) on or about the 23rd day of June 2004, (4) did operate or attempt to operate, (5) a clandestine drug laboratory, (6) in which he did assemble, (7) chemicals or equipment or a combination thereof, (8) in or on any real or personal property, (9) for the purpose of manufacturing methamphetamine.

Clearly, the trial court's instruction adopted the language of W.Va.Code § 60A–4–411, and plainly informed the jury of the particular offense for which the appellant was charged. Thus, the instruction was a correct statement of the law. Accordingly, we find no error in the trial court's instruction to the jury on the elements of operating or attempting to operate a clandestine drug laboratory.

■ Finally, the appellant avers that his proffered instruction was a correct statement of the law, that it was not substantively covered in the trial court's charge, and it covered an important point in the trial that was central to the appellant's presentation of

an effective defense. Therefore, the appellant posits that it was reversible error for the trial court to refuse to give the instruction.

 As noted by the appellant, this Court has stated that,

> an instruction offered by the defense should be given if the proposed instruction: (1) is substantively correct, (2) is not covered substantially in the charge actually delivered to the jury, and (3) involves an important issue in the trial so the trial court's failure to give the instruction seriously impairs the defendant's ability to effectively present a defense.

*State v. Hinkle*, 200 W.Va. 280, 285, 489 S.E.2d 257, 262 (1996), *citing State v. Derr*, 192 W.Va. 165, 180, 451 S.E.2d 731, 746 (1994). We find that the appellant's proffered instruction is not substantively correct. The instruction indicates that the crime of attempt requires an overt act toward the commission of the crime in the manufacturing process itself, beyond the assembly of chemicals or equipment for the purpose of manufacturing methamphetamine. This is incorrect. According to the plain language of W.Va.Code § 60A–4–411, the State is required to show as an overt act only that the defendant assembled chemicals or equipment or a combination thereof in or on any real or personal property for the purpose of manufacturing methamphetamine. In other words, in order to show attempt to operate a clandestine drug laboratory, no overt act other than the assembly of the chemicals or equipment indicated by the statute is required. Therefore, the circuit court did not abuse its discretion in refusing to give the appellant's requested instruction.

### IV.

### CONCLUSION

In sum, we conclude that the trial court did not err in refusing to give the appellant's instruction defining "attempt." The term "attempt," as used in W.Va.Code § 60A–4–411, is a general term within the common understanding of the jury so that the jury was not misled by the trial court's failure to define it. Also, the trial court's instruction included all of the essential elements of oper-

ating or attempting to operate a clandestine drug laboratory by adopting the language of the statute. Finally, the instruction proffered by the appellant was not a correct statement of the law in that it required an overt act toward the commission of the crime in the manufacturing process itself, beyond the assembly of chemicals or equipment for the purpose of manufacturing methamphetamine.

Having found no merit to the appellant's assignment of error, we affirm the appellant's January 27, 2005, conviction of the felony offense of operating or attempting to operate a clandestine drug laboratory pursuant to W.Va.Code § 60A–4–411 (2003).

Affirmed.