671 S.E.2d 478

**STATE of West Virginia, Plaintiff Below, Appellee**

v.

**Robert Lee SHINGLETON, Defendant Below, Appellant.**

**No. 33650.**

Supreme Court of Appeals of West Virginia.

Submitted Sept. 3, 2008.

Decided Nov. 19, 2008.

Dennis R. Bailey, Esq., Charleston, for the Appellant.

Stephen B. Revercomb, Esq., Prosecuting Attorney, Robert William Schulenberg, III, Esq., Assistant Prosecuting Attorney, Charleston, for the Appellee.

PER CURIAM:

The appellant, Robert Lee Shingleton, was found guilty by a jury in the Circuit Court of Kanawha County, West Virginia, of the felony offense of malicious assault. The Circuit Court entered judgment upon the verdict, denied the appellant's motion for a new trial and, following a recidivist proceeding, entered an order on October 24, 2006, sentencing him to 4 to 10 years in the penitentiary.[1] The appellant filed a notice of intent to appeal in the Circuit Court, and the appeal was subsequently granted by this Court. The appellant is incarcerated at the Correctional Center in St. Marys, West Virginia.

The conviction arose from the appellant striking and beating Edward Stanley Ayers in Ayers' apartment in Charleston, West Virginia, on August 31, 2004. As a result of the incident, Ayers was hospitalized for several days. The sole issue raised by the appellant is whether the Circuit Court abused its discretion in refusing to instruct the jury upon the appellant's theory of self-defense.

This Court has conducted a thorough examination of the record, including the testimony and exhibits admitted at trial, the petition for appeal and the memoranda of law filed in this Court. Contrary to the petition, a portion of the alleged facts relied upon by the appellant in justification for his conduct toward Ayers was never heard by the jury and, therefore, could not have formed a basis for an instruction upon self-defense.[2] That, and the remaining circumstances of this case, demonstrate to this Court that the Circuit Court exercised sound discretion in refusing to instruct the jury upon self-defense.

Consequently, the appellant's conviction of malicious assault and the October 24, 2006, sentencing order are affirmed.

# I.

## Factual Background

On August 31, 2004, appellant Shingleton, age 23, and Edward Stanley Ayers, age 43, engaged in conversation near the Tidewater

---

1. After the appellant's trial, the State filed an Information alleging that the appellant is the same person who has a previous felony conviction in Taylor County, West Virginia, for forgery. The appellant, on probation for that offense during the events in this case, admitted the allegation. As described by the State, the Information was a "first level recidivist information" which, in these circumstances, resulted in increasing the appellant's minimum term for malicious assault from 2 to 4 years. W. Va.Code, 61–11–18 (2000); W. Va.Code, 61–11–19 (1943). Higher levels can expose a convicted felon to a life sentence under those statutes.

In sentencing the appellant, the Circuit Court directed that the term of 4 to 10 years be served concurrently with the sentence imposed by the Circuit Court of Taylor County. Appellant Shingleton raises no issue concerning his sentence in this appeal.

2. Appellant Shingleton neither testified nor called any witnesses at trial. As declared in the petition for appeal, he "relied solely upon the evidence as presented and allowed his sworn statement, entered under no objection, to be his only voice to the jury" concerning self-defense.

In the statement, given to the Charleston police on September 8, 2004, the appellant asserted that, while in the apartment, Ayers, a homosexual, "put his hand between my arm and chest and grabbed me by my leg" and that the appellant, fearing that he was going to be sexually assaulted, began striking Ayers.

The Circuit Court conducted a pre-trial suppression hearing and ruled that the appellant's statement would be admissible at trial "at the will and pleasure" of the State. Nevertheless, the statement was never presented. In the appellant's brief filed in this Court, his counsel, who was not the appellant's counsel at trial, apologized and conceded that the petition was in error in maintaining that the statement had been admitted before the jury. This Court appreciates counsel's acknowledgment of the mistake.

Grill at the Town Center Mall in Charleston, West Virginia. They had never met before. Soon after, they entered Tidewater and began drinking alcohol. The appellant's drinks were purchased by Ayers. At Ayers' suggestion, they left Tidewater and walked to Broadway, a club located a few blocks east of the Town Center Mall. During the trial, Ayers testified that he is a homosexual and that Broadway is known as a "gay bar." The two men continued drinking alcohol at Broadway, and the appellant's drinks were purchased by Ayers.

Thereafter, at Ayers' suggestion, he and the appellant took a taxi to Ayers' Kanawha Boulevard apartment located a short distance away on the west side of the City. Chris Neely, the taxi driver, testified at trial that one of the men sat in the back and was intoxicated to the point of nearly passing out. The other individual, less intoxicated, sat in the front of the taxi and spoke to Neely. As Neely testified:

> The only thing that I recall that he said was, it was made known to me that the guy in the back had received his paycheck on that very day and the guy in the front made a comment, "Well, if this queer wants to spend his paycheck on me, then I'll let him." It may not be that exact words, don't get me wrong, but it was to that effect.

Upon entering the apartment, Ayers turned on the television, prepared some drinks and sat on the couch with the appellant. Ayers testified that, at that point, he put his hand on top of the appellant's leg which caused the appellant to become nervous and upset. Ayers stated that he offered the appellant $20 to leave the apartment.

Protesting that $20 was not enough, the appellant then struck Ayers on the left side of the face rendering him unconscious. According to Ayers, he was, therefore, unable to determine how many times the appellant struck him. When Ayers awoke, the appellant was gone, and Ayers discovered that his wallet, which contained some cash and a credit card, was missing. Bleeding profusely, Ayers called a friend for assistance. A 911 call was placed, and an ambulance transported Ayers to Charleston Area Medical Center, General Division. The wallet and its contents were never recovered.

Ayers spent four days in the hospital, including two days in the intensive care unit. It was determined that he suffered from blunt force trauma to the face, head and neck, with multiple fractures about the face and substantial blood loss.

The appellant was taken into custody on September 8, 2004.

## II.

### Procedural Background

In November 2004, a Kanawha County grand jury returned a two count indictment against appellant Shingleton charging him with robbery and malicious assault.[3] Trial began on June 21, 2005. The witnesses called by the State were: (1) Edward Stanley Ayers, (2) Chris Neely, a taxi driver employed by C & H Taxi Company, (3) Charleston law enforcement officers Tony Hazlett and J.J. Dotson, (4) paramedic Ryan Vaughan and (5) Dr. Richard Umstadt, a trauma surgeon at Charleston Area Medical

---

3. Count 1 of the indictment charged the appellant, pursuant to *W. Va.Code*, 61–2–12(a) (2000), with the taking of Ayers' wallet, credit card and cash. Subsection (a) provides:

> Any person who commits or attempts to commit robbery by: (1) Committing violence to the person, including, but not limited to, partial strangulation or suffocation or by striking or beating; or (2) uses the threat of deadly force by the presenting of a firearm or other deadly weapon, is guilty of robbery in the first degree and, upon conviction thereof, shall be imprisoned in a state correctional facility not less than ten years.

Count 2 charged the appellant, pursuant to *W. Va.Code*, 61–2–9 (2004), with the malicious wounding of Ayers. Subsection (a) thereof states in part:

> If any person maliciously shoot, stab, cut or wound any person, or by any means cause him bodily injury with intent to maim, disfigure, disable or kill, he shall, except where it is otherwise provided, be guilty of a felony and, upon conviction, shall be punished by confinement in the penitentiary not less than two nor more than ten years.

Center, General Division.[4] The appellant neither testified nor called any witnesses at trial. The jury found the appellant not guilty of robbery. However, the jury found the appellant guilty of malicious assault.[5]

During the trial, the appellant's counsel requested that the jury be instructed upon the appellant's theory of self-defense. The Circuit Court refused the request and stated:

There's just no evidence that your client did anything based upon self-defense. * * * Your client was a lot, lot less intoxicated, according to the cab driver than the victim. So just looking at those pieces of testimony and a drunk, person intoxicated, touching another person's leg and as amounting to some kind of man-endangering attack or assault? I don't think so[.] * * * Not enough to give an instruction. But if you want to get up and argue that to the jury, you go right on.

The appellant's counsel argued to the jury that the appellant's actions were based upon a reasonable belief that he was about to be sexually assaulted by Ayers in the apartment.

Following the verdict, the appellant filed a motion for a new trial, alleging that the Circuit Court committed error in refusing to instruct upon self-defense. The Circuit Court denied the motion and, in its order, set forth the following reason: The defendant was not entitled to an instruction on self-defense "since there was neither evidence of any subjectively reasonable nature nor any objectively reasonable nature" that he was receiving, or was about to receive, a violent assault or a sexual assault.[6]

Following the recidivist proceeding in which the Circuit Court found that the appellant is the same person who has a previous felony conviction in Taylor County, West Virginia, for forgery, the appellant was sentenced on October 24, 2006, to 4 to 10 years in the penitentiary. *See,* n. 1, *supra.* Subsequently, this Court granted appellant Shingleton's appeal.

## III.

### Standards of Review

Syllabus point 1 of *State v. Hinkle,* 200 W.Va. 280, 489 S.E.2d 257 (1996), observes that "[a]s a general rule, the refusal to give a requested jury instruction is reviewed for an abuse of discretion. By contrast, the question of whether a jury was properly instructed is a question of law, and the review is *de novo.*" Syl. pt. 2, *State v. Jett,* 220 W.Va. 289, 647 S.E.2d 725 (2007); syl. pt. 1, *State v. Thompson,* 220 W.Va. 246, 647 S.E.2d 526 (2007); syl. pt. 1, *State v. Brooks,* 214 W.Va. 562, 591 S.E.2d 120 (2003); syl. pt. 3, *State v. Phillips,* 205 W.Va. 673, 520 S.E.2d 670 (1999). Citing *Hinkle,* 10A M.J., *Instructions* § 8 (Matthew Bender & Co. 2003), states: "Whether facts are sufficient to justify the delivery of [a] particular instruction is reviewed by the West Virginia Supreme Court under an abuse of discretion standard."

Nevertheless, the scope and reach of that discretion is subject to fundamental guidelines. As long recognized: "Where there is competent evidence tending to support a pertinent theory in the case, it is the duty of the trial court to give an instruction presenting such theory when requested to do so." Syl. pt. 7, *State v. Alie,* 82 W.Va. 601, 96 S.E. 1011 (1918). *State v. Headley,* 210 W.Va. 524, 529, 558 S.E.2d 324, 329 (2001); syl. pt. 3, *State v. Foley,* 128 W.Va. 166, 35 S.E.2d 854 (1945). *See also,* syl. pt. 2, *State v. McCoy,* 219 W.Va. 130, 632 S.E.2d 70 (2006) (stating, in part, that "a criminal defendant is entitled to an instruction on any

---

4. Officers Hazlett and Dotson and paramedic Vaughan testified, *inter alia,* that when they arrived at the scene they observed blood throughout Ayers' apartment.

5. For its deliberation upon the charge of malicious assault, the jury was given a verdict form which provided the following options: (1) guilty of malicious assault, (2) guilty of unlawful assault, (3) guilty of battery and (4) not guilty.

6. During the hearing upon the motion for a new trial, the appellant's counsel suggested that, while in the apartment, the appellant thought that Ayers could be H.I.V. positive. The appellant's counsel acknowledged, however, that the appellant had no factual knowledge either way of Ayers' health status.

recognized defense for which there exists evidence sufficient for a reasonable jury to find in his / her favor.").

■ The counterpart, stated in the negative, to the latter principle is found in syllabus point 4 of *State v. Collins*, 154 W.Va. 771, 180 S.E.2d 54 (1971), which holds: "Instructions must be based upon the evidence and an instruction which is not supported by evidence should not be given." Syl. pt. 3, *State v. Dinger*, 218 W.Va. 225, 624 S.E.2d 572 (2005); syl. pt. 3, *State v. Leonard*, 217 W.Va. 603, 619 S.E.2d 116 (2005); *State v. Sexton*, 176 W.Va. 595, 599, 346 S.E.2d 745, 748 (1985). *See,* Vol. 2, F.D. Cleckley, *Handbook on West Virginia Criminal Procedure* p. 87 (2nd ed. Cum. Supp. 2008) ("A defendant is only entitled to a jury instruction if the facts support the defense.") [7]

## IV.

### Discussion

Appellant Shingleton contends that the refusal of the Circuit Court to instruct the jury upon his theory of self defense resulted in an unfair trial and constituted a denial of his right to due process.[8] As stated above, he maintained that his actions were based upon a reasonable belief that he was about to be sexually assaulted by Ayers in the apartment. In that regard, this Court confirmed last year that, once there is sufficient evidence to create a reasonable doubt concerning whether the defendant acted in self-defense, the State must prove beyond a reasonable doubt that the defendant did not act in self-defense. Syl. pt. 8, *State v. Whittaker*, 221 W.Va. 117, 650 S.E.2d 216 (2007). *See also,* syl. pt. 4, *State v. Kirtley*, 162 W.Va. 249, 252 S.E.2d 374 (1978); 2A *Instructions for Virginia and West Virginia* § 24–225.1, Editor's note (5th ed. Matthew Bender & Co. 2002). Moreover, in *State v. McCoy, supra,* this Court stated that a defendant is entitled to an instruction upon

self-defense upon any evidence supporting that theory, "regardless of the weakness or strength of that evidence." 219 W.Va. at 135, 632 S.E.2d at 75.

■ Consequently, the appropriateness of including self-defense in the matters to be considered by a jury, while subject to a rather broad standard, must, nevertheless, be determined upon a case-by-case basis. In *State v. Watson*, 164 W.Va. 642, 264 S.E.2d 628 (1980), for example, involving a conviction of unlawful assault, this Court held that the evidence at trial failed to demonstrate ineffective assistance of counsel where self-defense had not been raised. In *Watson,* a fight occurred at a supper club during which a third-party, Henthorn, approached and was struck by the defendant. Henthorn, whose testimony was confirmed by the defendant's sister and others, stated that he "entered the area unaware that an altercation was taking place and was accosted by the defendant without warning. He stated that he was struck by the defendant with his fist and then severely injured by the defendant as a result of a blow with a pool stick." 164 W.Va. at 644, 264 S.E.2d at 630. Reaffirming the principle that "[o]rdinarily, self-defense is not available to the aggressor who precipitates an affray without legal justification," 164 W.Va. at 651, 264 S.E.2d at 633, this Court held, in *Watson,* that not raising the issue of self-defense, under the above circumstances, did not constitute ineffective assistance of counsel.

Moreover, in *State v. Asbury*, 187 W.Va. 87, 415 S.E.2d 891 (1992), also involving a conviction for unlawful assault, this Court held that the trial court properly refused the defendant's requested self-defense instruction. In that case, the victim was accosted outside his apartment by the defendant, Raymond C. Asbury, Jr., who accused him of having an affair with the defendant's former wife. The defendant began striking the vic-

---

7. The above concepts concerning jury instructions in criminal cases have prevailed in this Court for a very long time. Syllabus point 13 of *State v. Abbott*, 8 W.Va. 741 (1875), for example, recognizes that, in a felony case, a trial court should not give the jury instructions "which are not relevant to the evidence."

8. U.S. Const. Amend V and amend. XIV provide that no person shall be deprived of life, liberty or property without due process of law. Similarly, W.Va. Const. Art. III, § 10, provides that no person shall be deprived of life, liberty or property without due process of law.

tim with his fists and kicking him. The victim's injuries included severe facial lacerations. At trial, Asbury asserted that the victim shoved him, thus starting a fight. The victim, however, maintained that he was backing away when Asbury began hitting him.

Concluding in *Asbury* that an instruction on self-defense would have been inappropriate in those circumstances, this Court stated: "We find that under either version of the October 15, 1989, events, Mr. Asbury is not entitled to an instruction on self-defense because either Mr. Asbury was the aggressor or Mr. Asbury never felt threatened. We, therefore, find that the Circuit Court's refusal to give the self-defense instruction was proper." 187 W.Va. at 90, 415 S.E.2d at 894.

Here, according to the evidence before the jury, when the two men entered Ayers' apartment, Ayers turned on the television, prepared some drinks and sat on the couch with the appellant. Ayers testified that, at that point, he put his hand on top of the appellant's leg which caused the appellant to become nervous and upset. Ayers attempted no further physical contact. Ayers stated that he then offered the appellant $20 to leave the premises. Protesting that $20 was not enough, the appellant struck Ayers on the left side of the face rendering him unconscious.[9] According to Ayers, he was, therefore, unable to determine how many times the appellant struck him. When Ayers awoke, the appellant was gone. Ultimately, an ambulance transported Ayers to the hospital.

Every indication from the evidence heard by the jury reveals that, after the appellant first struck Ayers rendering him unconscious, the appellant continued to strike him. The evidence demonstrates that Ayers spent four days in the hospital, including two days in the intensive care unit. He suffered from blunt force trauma to the face, head and neck, with multiple fractures about the face and substantial blood loss. Nothing at trial suggested that the appellant was prevented from immediately walking out of the apartment when Ayers placed his hand upon the appellant's leg.

Noting that the appellant was less intoxicated than Ayers, the Circuit Court determined that there was no evidence that the appellant's actions were based upon self-defense. Upon review, those conclusions are supported by the record. Accordingly, this Court is of the opinion that the refusal of the Circuit Court to instruct the jury upon self-defense was "protected by the parameters of sound discretion." *Thompson, supra,* 220 W.Va. at 253, 647 S.E.2d at 533, citing *Parker v. Knowlton Construction Company,* 158 W.Va. 314, 329, 210 S.E.2d 918, 927 (1975).

### V.

### Conclusion

The evidence at trial, including photographs of Ayers taken in his apartment, reveals that Ayers sustained a brutal beating, rendering the proposition that the appellant was entitled to have the jury instructed upon a theory of self-defense difficult to sustain. The refusal to so instruct the jury and the denial of the motion for a new trial were proper. Therefore, appellant Shingleton's conviction of malicious assault and the October 24, 2006, sentencing order are affirmed.

Affirmed

---

9. Ayers testified at trial as follows:
    Q. And what was his response to your offer of twenty dollars?
    A. It wasn't enough.
    Q. When you say it wasn't enough, what do you mean?
    A. I guess he wanted more than that.
    Q. Then what happened?
    A. The next thing I knew, I got hit in the side of my face and went unconscious.
    Q. Do you recall what side?
    A. My left side.