[S.F. No. 23052. In Bank. June 5, 1974.]

VERNEL EVANS, Petitioner, v.
THE SUPERIOR COURT OF CONTRA COSTA COUNTY,
Respondent;
THE PEOPLE, Real Party in Interest.

618

William R. Higham, Public Defender, and Mark B. Simons, Deputy Public Defender, for Petitioner.

No appearance for Respondent.

Evelle J. Younger, Attorney General, Edward A. Hinz, Jr., Chief Assistant Attorney General, Doris H. Maier, Assistant Attorney General, Robert R. Granucci and Thomas A. Brady, Deputy Attorneys General, for Real Party in Interest.

OPINION

WRIGHT, C. J.—On application of Vernel Evans we issued an alternative writ of mandate requiring the respondent court to vacate or to show cause why it should not vacate an order denying petitioner the right to be identified pursuant to a lineup in criminal proceedings on an information charging three counts of robbery, one count of receiving stolen property and one count of a concealed weapon violation (Pen. Code, §§ 211, 496 and 12021 respectively).[1] The trial court, after tentatively finding that fairness dictated that petitioner should be afforded the identification procedures requested, denied relief on the ground that it lacked discretion to order the holding of a lineup. ■ We conclude that the court did have discretion to make such an order and that the People have failed to show

---

[1] All statutory references are to sections of the Penal Code unless otherwise specified.

cause. Accordingly, we hold that petitioner is entitled to the relief hereinafter provided.

In May 1973 James Liddle was seated at the counter of his drive-in restaurant, then occupied by one customer, a waitress and himself. Two men entered and walked directly to the area behind the counter. One of the men, later identified by Liddle as the petitioner, held a .45 caliber pistol in his hand which he cocked and pointed at Liddle. Petitioner's companion went to the cash register and with the coerced assistance of the waitress opened it and removed approximately $60. Petitioner then demanded and received Liddle's wallet and ring and the customer's wallet. The robbers who were in the restaurant for approximately five minutes then left through the parking lot.

Police officers responded to a telephone call reporting the robbery. As they approached in their patrol car they observed two men running from the direction of the restaurant, then a distance of five or six city blocks. The men fit the description received by the police by radio[2] of the men who had just committed the robberies. The officers continued to observe the men as they entered and then left an automobile in which another man was sitting. The officers apprehended the two suspects, placed them in the parked automobile and a search of the car disclosed a .45 caliber automatic pistol. On the pavement near the vehicle were two wallets. Although the suspects had no money at the time of their arrests the third man sitting in the car had a large amount of cash on his person.

The suspects were placed in the rear-seat compartment of the patrol car and returned to the restaurant. There, within 15 minutes of the time of the robberies, Liddle told the officers that the suspects appeared to have the same physical builds as the men who had robbed him. The suspects did not leave the police vehicle and Liddle and the other witnesses viewed them only through the back window, observing only the backs of their heads and shoulders.

Petitioner entered pleas of not guilty to the charges. At the preliminary hearing Liddle was the only witness who testified as to the actual robberies. He identified petitioner without objection by pointing him out as the per-

---

[2]The robbers were described to the officers as being black and approximately 18 years of age. One of the men was further described as being tall and thin and as wearing a denim jacket. The other was described as shorter and as wearing a grey shirt and pants and as carrying a .45 caliber automatic pistol.

son who held the gun during the robberies. Petitioner was held to answer on each charge.[3]

Petitioner next filed a "Notice of Motion for Lineup" and so moved prior to trial. It was argued in support of the motion that because petitioner was identified at the scene of the robbery by witnesses (which included Liddle) who saw only a limited view of petitioner's head and shoulders from the rear, the identification was faulty; that because the witnesses had committed themselves as to the identifications they would be reluctant to recede from such a position, even if in error, at later proceedings in court; that they would be inclined to continue to identify petitioner merely because he is the accused, is black, would appear in jail denims and would be positioned at the side of defense counsel. The issue thus raised is one of due process fairness.

The trial court stated in response to the motion that "in the interest of fair play . . . the defendant should be given the opportunity to have the very lineup which he is seeking. . . . [A]n in-court identification of the defendant seated at a counsel table is inherently suggestive." The motion was denied, however, because the court concluded that it lacked the discretion to order the People to conduct such a lineup. In so concluding the court relied on *People* v. *London* (1969) 274 Cal.App.2d 241 [78 Cal. Rptr. 848]. The court in that case was of the view that there was merit in the claim of a right to a pretrial lineup because an in-court identification of a defendant seated at a counsel table was inherently suggestive, but concluded that "it is not for this court, operating at our intermediate level, to introduce an additional requirement on police and prosecutors." (*Id.,* at p. 243.)

There are no cases which hold as a matter of discovery in criminal matters that a trial court may order the granting of a defendant's request for a pretrial lineup. It is indisputable, however, that when the People seek to deprive an accused of his liberty based on identification evidence such can only be done by procedures which accord to him due process of law. (*People* v. *Caruso* (1968) 68 Cal.2d 183, 188-190 [65 Cal.Rptr. 336, 436 P.2d 336].) Unlike *Caruso,* the precise question now raised is not whether the People's affirmative evidence of identification is so impermissibly un-

---

[3]A separate robbery count (§ 211) was charged as to each of the three victims, Liddle, his waitress and customer. The receiving charge (§ 496) was based on petitioner's possession of the particular .45 caliber automatic pistol and testimony that the pistol had been stolen at a time prior to the robberies. The concealed weapon charge (§ 12021) was also based on petitioner's possession of the pistol and evidence that he had suffered the prior conviction of a felony (grand theft). Petitioner is also charged with having suffered such prior conviction.

fair that its receipt would infringe an accused's rights of due process. The question is whether *prior* to the in-court receipt of evidence of identification the accused can insist that procedures be afforded whereby the weakness of the identification evidence, if it is in fact weak, can be disclosed. The question is thus not one of fairness in receiving evidence but rather one of fairness to an accused on pretrial discovery.

The People contend that discovery has been judicially limited to specific categories,[4] none of which includes the disclosure sought by petitioner. The People additionally recognize in their return, however, that "the prosecution must disclose items of substantial and material evidence known to it, which evidence is favorable to the defense, even in the absence of a request for disclosure." It is within this broad category that the disclosure here sought properly falls.

In the case of *In re Ferguson* (1971) 5 Cal.3d 525 [96 Cal.Rptr. 594, 487 P.2d 1234], we held that the failure of the People to disclose, even in the absence of a request therefor, the criminal record of a material witness whose testimony might thereby have been impeached resulted in the deprivation of a fair trial. We stated in that case: "The search for truth is not served but hindered by the concealment of relevant and material evidence. Although our system of administering criminal justice is adversary in nature, a trial is not a game. Its ultimate goal is the ascertainment of truth, and where furtherance of the adversary system comes in conflict with the ultimate goal, the adversary system must give way to reasonable restraints designed to further that goal. Implementation of this policy requires recognition of a duty on the part of the prosecution to disclose evidence to the defense in appropriate cases." (*Id.,* at pp. 531-532.)

Although *Ferguson* did not directly involve discovery procedures and the unique facts of that case may have compelled the result reached by this court, it did impose stricter requirements of disclosure on the People. Certainly, if the People can be compelled in a proper case to disclose

[4]The People recognize the following categories: Prior statements by a defendant to agents of the state (*Powell* v. *Superior Court* (1957) 48 Cal.2d 704 [312 P.2d 698]); statements by a codefendant or alleged conspirator to agents of the state (*People* v. *Aranda* (1965) 63 Cal.2d 518, 527-528, fn. 6 [47 Cal.Rptr. 353, 407 P.2d 265]); statements by prospective witnesses to agents of the state (*Funk* v. *Superior Court* (1959) 52 Cal.2d 423 [340 P.2d 593]); the names and addresses of eyewitnesses known to the People (*Norton* v. *Superior Court* (1959) 173 Cal.App. 2d 133 [343 P.2d 139]); and physical evidence in possession of the People (*id.; Walker* v. *Superior Court* (1957) 155 Cal.App.2d 134 [317 P.2d 130]). While this case was pending on appeal we recognized an additional category: the prior felony convictions of persons to be called as witnesses by the prosecutor (*Hill* v. *Superior Court* (1974) 10 Cal.3d 812 [112 Cal.Rptr. 257, 518 P.2d 1353]).

material evidence even in the absence of a request therefor (see *In re Lessard* (1965) 62 Cal.2d 497, 509 [42 Cal.Rptr. 583, 399 P.2d 39]) they can be similarly compelled to do so upon a request in the nature of discovery.

Evidence of identification in criminal proceedings is not only material but is also frequently determinative of an accused's guilt. No reason appears why such evidence should not be discoverable by an accused in cases wherein the People are afforded an opportunity to require its disclosure. (See *Williams* v. *Florida* (1970) 399 U.S. 78 [26 L.Ed.2d 446, 90 S.Ct. 1893].) A properly conducted lineup is, among other things, a device by which the People can discover which witnesses are able to identify an accused and thus provide material evidence of guilt. At the same time the lineup may reveal that other witnesses, perhaps some who should be able to identify the real perpetrator of a crime, are unable to identify the particular accused as such criminal. If so, that evidence is equally material and access thereto should not be denied an accused.

■ Because the People are in a position to compel a lineup and utilize what favorable evidence is derived therefrom, fairness requires that the accused be given a reciprocal right to discover and utilize contrary evidence. (See *Wardius* v. *Oregon* (1973) 412 U.S. 470 [37 L.Ed.2d 82, 93 S.Ct. 2208].) In *Wardius* the United States Supreme Court stated that "although the Due Process Clause has little to say regarding the amount of discovery which the parties must be afforded . . . , it does speak to the balance of forces between the accused and his accuser. . . . We do not suggest that the Due Process Clause of its own force requires Oregon to adopt [discovery proceedings]. . . . But we do hold that in the absence of a strong showing of state interests to the contrary, discovery must be a two-way street. The State may not insist that trials be run as a 'search for truth' so far as defense witnesses are concerned, while maintaining 'poker game' secrecy for its own witnesses." (*Id.,* at pp. 474-475 [37 L.Ed.2d at pp. 87-88].)[5]

It does not appear in the instant case that the People had conducted a lineup or that they had acquired evidence that any of the three witnesses of the robbery could or could not have identified petitioner at a duly conducted lineup. However, we are not concerned that the petitioner's motion for a pretrial lineup sought the discovery of evidence not neces-

---

[5]*Wardius* did not involve a lineup. Defendant had failed to serve notice on the state that he would rely on an alibi and, in accordance with an Oregon statute, was denied the right to introduce alibi evidence. The high court held that the denial was fundamentally unfair because the defendant was afforded no reciprocal right of discovery under the statute.

sarily then within the People's knowledge if within the People's reach. ▮ We have held in other instances that the People cannot escape a responsibility to disclose merely by passive conduct or the failure to acquire precise knowledge sought by but unavailable to an accused. "In the light of the great resources at the command of the district attorney and our commitment that justice be done to the individual, restraints are placed on him to assure that the power committed to his care be used to further the administration of justice in our courts and not to subvert our procedures in criminal trials designed to ascertain the truth." (*In re Ferguson, supra,* 5 Cal.3d 525, 531.)

In *People* v. *Kiihoa* (1960) 53 Cal.2d 748 [3 Cal.Rptr. 1, 349 P.2d 673] the district attorney failed to timely prosecute a case because to do so would have required the disclosure of the identity of an informant, thereby exposing him to possible reprisal. We held that "however praiseworthy was the prosecution's motive in protecting the informer from the threat of reprisal" those "motives and purposes cannot prevail when, as here, they inevitably result, intentionally or unintentionally, in depriving the defendant of a fair trial." (*Id.,* at p. 754.)

In *Ballard* v. *Superior Court* (1966) 64 Cal.2d 159 [49 Cal.Rptr. 302, 410 P.2d 838] we held that a trial court could order the complaining witness in a sex case to submit to a psychiatric examination when the accused presented a compelling reason why such an examination was necessary to insure him a fair trial.

In *People* v. *Goliday* (1973) 8 Cal.3d 771 [106 Cal.Rptr. 113, 505 P.2d 537] an officer testified that he deliberately refrained from obtaining information concerning two informers who might provide evidence favorable to the accused. We held that the police and prosecution must " 'undertake *reasonable efforts* in good faith to *locate* [an] informer so that either party or the court itself . . . could, if it so desired, subpena him as a witness.' (*Eleazer* v. *Superior Court, supra,* 1 Cal.3d at p. 853.)" (*Id.,* at p. 774.) The rationale of our holding that the People's duty included not only disclosure but also action to obtain information was stated as follows: "We recognized the futility of a rule requiring disclosure of the information which the police know about a material witness informer without a further requirement that the police make efforts to obtain information useful in locating the informer as well." (*Id.,* at p. 778.)

Also in point is *In re Newbern* (1959) 175 Cal.App.2d 862 [1 Cal.Rptr. 80]. There the defendant was accused of intoxication. His request for an Intoximeter test was denied as was his request for a private physician to draw a sample of his blood for purposes of determining its alcoholic con-

tent. In granting the petitioner relief on his collateral attack based on a denial of due process, the court stated: "Counsel for respondent argues that there could be no suppression of evidence because the evidence did not in fact exist. However, when, in the exercise of their power to arrest, the police deprived the arrested person of the opportunity to obtain evidence that might establish his innocence, they are suppressing it just as effectively as if it did exist and they withheld it." (*Id.,* at p. 865.)

Here petitioner seeks to compel the People to exercise a duty to discover material evidence which does not now, in effect, exist. Should petitioner be denied his right of discovery the net effect would be the same as if existing evidence were intentionally suppressed. ■ It is settled that the intentional suppression of material evidence denies a defendant a fair trial. (*Brady* v. *Maryland* (1963) 373 U.S. 83, 87 [10 L.Ed.2d 215, 218-219, 83 S.Ct. 1194].)

■ We conclude in view of the foregoing that due process requires in an appropriate case that an accused, upon timely request therefor, be afforded a pretrial lineup in which witnesses to the alleged criminal conduct can participate. The right to a lineup arises, however, only when eyewitness identification is shown to be a material issue and there exists a reasonable likelihood of a mistaken identification which a lineup would tend to resolve.[6]

The questions whether eyewitness identification is a material issue and whether fundamental fairness requires a lineup in a particular case are inquiries which necessarily rest for determination within the broad discretion of the magistrate or trial judge. (See *United States* v. *MacDonald* (9th Cir. 1971) 441 F.2d 259, cert. den., 404 U.S. 840 [30 L.Ed.2d 74, 92 S.Ct. 133]; *United States* v. *Ravich* (2d Cir. 1970) 421 F.2d 1196, 1202-1203.) We do not hold, accordingly, that in every case where there has not been a pretrial lineup the accused may, on demand, compel the People to arrange for one. Rather, as in all due process determinations, the resolution here to be made is one which must be arrived at after consideration not only of the benefits to be derived by the accused and the reasonableness of his request but also after considering the burden to be imposed on the prosecution, the police, the court and the witnesses.

We do note parenthetically that the accused himself has neither the facilities nor the experience to conduct an impartial lineup. The burden

---

[6]We disapprove the following cases insofar as they are inconsistent with the views expressed herein: *People* v. *Holt* (1972) 28 Cal.App.3d 343 [104 Cal.Rptr. 572]; *People* v. *Doran* (1972) 24 Cal.App.3d 316 [100 Cal.Rptr. 886]; *People* v. *London, supra,* 274 Cal.App.2d 241 [78 Cal.Rptr. 848].

on the police is a nominal one, as the facilities, resources and other individuals who may be used in conducting a lineup are generally available. The procedure is one which uniquely falls within police expertise and routine practices.

■ The broad discretion vested in a trial judge or magistrate includes the right and responsibility on fairness considerations to deny a motion for a lineup when that motion is not made timely. Such motion should normally be made as soon after arrest or arraignment as practicable. We note that motions which are not made until shortly before trial should, unless good cause is clearly demonstrated, be denied in most instances by reason of such delay. Dilatory or obstructive tactics made under the guise of seeking discovery but which tend to defeat the ends of justice will necessarily be weighed heavily on timeliness grounds against the granting of the motion within discretionary limits. These considerations along with the factors routinely considered in determining whether a decision should be accorded a retroactive effect (see, e.g., *People* v. *Beagle* (1972) 6 Cal.3d 441, 454-455, fn. 2 [99 Cal.Rptr. 313, 492 P.2d 1]) cause us also to conclude that our holding herein should be applied only to defendants arrested after this decision becomes final.

We reject the suggestion that an in-court lineup or some claimed equivalent thereof would be adequate in those cases wherein fairness dictates that an accused should be afforded a lineup. ■ As in all discovery matters an accused is entitled to the knowledge to be gained from a lineup sufficiently in advance of trial to prepare therefor.

The record in the instant case discloses that the trial court had made tentative findings, based on the showing in support of petitioner's motion, which would have required that petitioner be afforded a lineup. The court, however, recognized that its determination was a provisional one and that the People may not have had a full and fair opportunity to show cause in view of the prevailing rule which made it unnecessary for the People to do so. The People should be given that opportunity.[7]

---

[7] A fuller statement of the court's statement, quoted in part earlier, is as follows:

"First, I conclude by virtue of the language in People versus London, last paragraph of which is: 'Although the suggestion that the Court should allow a defendant the privilege of a pretrial lineup, if he desires it, is ingenious; and, as we have said, not without merit. Still, it is not for This Court, operating at an intermediate level, to introduce an additional requirement on police and prosecutors.' I feel bound by that language, and accordingly am going to deny the defendant's motion.

"Secondly, if I had the discretion, I would have granted the motion, since the People have shown no good reason why I should not grant the motion. And it is

■ We have attempted to set out broad guidelines which may aid a trial judge or magistrate in the exercise of his discretion in ruling on a defense motion for a pretrial lineup. In treating such issues, however, it is not our intention to obscure our basic holding that the judge or magistrate is in fact vested with discretion to grant such a motion in an appropriate case.

Let the peremptory writ issue directing the respondent court to vacate its order denying petitioner's motion for a pretrial lineup, and to proceed in accordance with the views expressed in this opinion.

McComb, J., Tobriner, J., Mosk, J., Burke, J., and Sullivan, J., concurred.

Clark, J., concurred in the order.

On July 1, 1974, the opinion was modified to read as printed above.

---

my judgment that in the interest of fair play, that the defendant should be given the opportunity to have the very lineup which he is seeking. . . .

"I think the People, in the event this case were to come back to me, should be afforded the opportunity to show good cause, if they felt that that was appropriate. And the fact that they have not given me any reasons today why I should not exercise my discretion, if any, it should not be determined against them. Since the People correctly in my judgment have viewed the current status of the law and felt there was no need to give me any affidavits or any other suggestion as to reasons why I should not exercise the discretion, as I indicated I would, were I to have had it. So the motion for discovery, because of the law, is denied."