173 Cal.App.4th 1446 (2009)
___ Cal.Rptr.3d ___
THE PEOPLE, Plaintiff and Respondent,
v.
JOAQUIN MENA, Defendant and Appellant.
No. D052091.
Court of Appeals of California, Fourth District, Division One.
May 19, 2009.
*1448 John P. Dwyer, under appointment by the Court of Appeal, for Defendant and Appellant.
Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Barry Carlton and Susan Miller, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION
McDONALD, J. 
A jury convicted defendant Joaquin Mena of two counts of assault with a deadly weapon (Pen. Code, § 245, subd. (a)(1);[1] counts 1 & 2), and one count of carrying a concealed dirk or dagger (§ 12020, subd. (a)(4); count 3), and found true the special allegations that Mena committed counts 1 and 2 for the benefit of a criminal street gang (§ 186.22, subd. (b)(1)). The court placed Mena on probation. On appeal, Mena asserts the court abused its discretion by denying his motion for a pretrial lineup, and the terms of his probation are vague and overbroad.

FACTS

The Attack
On April 13, 2007, 15-year-old Jesus C. and 17-year-old Jonathan F. were walking home. As they crossed an intersection, two cars (each carrying *1449 several men) stopped in the intersection. An occupant from one car got out, asked the boys, "How's the East Side treating you?" and walked toward them. Jesus knew they were in an area claimed by the East Side gang as its territory, and thought the man was an East Side member. Jesus replied "I don't bang," signifying he was not involved in any gangs.
The man responded by swinging his fist at Jesus; the other occupants of the cars got out and approached Jesus. One of the men had a baseball bat and another was holding a knife. Jesus and Jonathan began running and the men chased them. The man carrying the knife, two feet behind Jesus, swung the knife in Jesus's direction, trying to stab him. The man yelled, "stop running or I'm going to shank you." Jesus ran about a block before his pursuers gave up the chase.
A man carrying a bat and another man with a knife chased Jonathan. One man hit Jonathan in the head with the bat, knocking him to the ground; however, he was able to get back up and continue running.
When Jesus realized the men had stopped chasing him, he stopped and looked back. He watched the men return to their cars and drive away.

The Investigation
Jonathan went to the hospital. An officer questioned Jesus at the scene to obtain a description of the assailants. Jesus stated they were Hispanic males in their teens to early 20's, some of whom had shaved heads, but did not provide more detailed descriptions. These descriptions fit numerous persons living in the area.
After the assaults, police patrolled the area, looking for the cars involved in the attack. Police observed a car, roughly matching the description of one of the cars carrying the attackers, parked in front of a house just a few blocks from the site of the attack. Four males with shaved heads or short hairlater identified as Mena and codefendants Lopez and Pasillas and a Mr. Fergusonwere sitting in the front yard. When the officers got out of their car, Pasillas and Ferguson ran inside. Mena and Lopez remained outside, sitting in chairs decorated with East Side gang graffiti. Police searched Mena and found a steak knife in his pocket. They also found a spray paint can and two freshly painted baseball bats in the front yard.
Inside the house, officers found Pasillas hiding under the covers in bed, pretending to be asleep. Pasillas was sweating profusely and his shirt was damp with sweat. He also had lacerations on his face and dried blood on his face, neck and shirt.

*1450 The Curbside Lineup

A few hours after the attack, police brought Jesus to the house for a curbside lineup. It was still light outside. Jesus remained in the backseat of the police car as police brought each suspect, separately, to stand in front of the police car. There was some discrepancy as to the distance between Jesus and the suspects. One officer stated the suspects stood between 15 and 20 feet from the front of the car, and another officer estimated the distance from Jesus to each suspect was 35 to 40 feet. The officers had each suspect turn to allow Jesus to view the front, sides and back of each of them. Jesus identified Mena, Lopez, Pasillas and another man found inside the house (Mr. Valle) as being involved in the attack, but stated Ferguson had not been involved.
Approximately one month later, police showed Jonathan four "six-pack" photograph arrays, one for each suspect. The only picture Jonathan was able to identify was Mena, but Jonathan stated only that he looked like one of the men involved in the attack, but he was not sure.

ANALYSIS

A. The Pretrial Lineup Motion

Mena asserts the judgment of conviction must be reversed because the court erroneously denied his motion for a pretrial lineup, and this error was prejudicial under Chapman v. California (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705, 87 S.Ct. 824].

The Motion
One week before the scheduled preliminary hearing, a codefendant, Lopez, moved for an order compelling the police to conduct a live physical lineup attended by Jesus, as provided under Evans v. Superior Court (1974) 11 Cal.3d 617 [114 Cal.Rptr. 121, 522 P.2d 681] (Evans). The motion, in which Mena joined, argued there were sufficient grounds to order a lineup because there was a reasonable likelihood of misidentification by Jesus. The motion argued Jesus had minimal opportunity to observe the attackers before he started running away, his description of the attackers was minimal and he was equivocal whether he could identify the attackers before the requested lineup occurred, the curbside lineup was conducted under problematic conditions, and the fact there were numerous attackers of similar appearances raised concerns about Jesus's ability to distinguish individual identities. The court denied the motion because it found there was no reasonable likelihood there was a mistaken identification that would be addressed by a lineup.

*1451 Applicable Standards

(1) In Evans, the Supreme Court concluded "due process requires in an appropriate case that an accused, upon timely request therefor, be afforded a pretrial lineup in which witnesses to the alleged criminal conduct can participate. The right to a lineup arises, however, only when eyewitness identification is shown to be a material issue and there exists a reasonable likelihood of a mistaken identification which a lineup would tend to resolve." (Evans, supra, 11 Cal.3d at p. 625, fn. omitted.) The prerequisites for obtaining an Evans lineup are (1) a timely request for the lineup, (2) a showing eyewitness identification was a material issue, and (3) a showing a reasonable likelihood of a mistaken identification existed that a lineup would tend to resolve. (People v. Farnam (2002) 28 Cal.4th 107, 184 [121 Cal.Rptr.2d 106, 47 P.3d 988].)

Analysis
We have some reservations whether a defendant's right to seek an Evans lineup survived the enactment of Proposition 115. After the passage of Proposition 115, no discovery may occur in criminal cases "except as provided by [Penal Code sections 1054 through 1054.10], other express statutory provisions, or as mandated by the [federal] Constitution . . . ." (§ 1054.) A lineup under Evans is not provided by either the provisions of sections 1054 through 1054.10 or any other express statutory provisions, and therefore is only obtainable if expressly mandated by the federal Constitution. Although some passages in Evans suggest a defendant's right to seek a lineup is rooted in the due process clause (see, e.g., Evans, supra, 11 Cal.3d at p. 625), other passages in Evans suggest the right to seek a lineup was necessary to ensure fairness in pretrial discovery (id. at p. 622). However, because the parties in this case (responding to our request for supplemental briefing on this issue) agree Evans survived the passage of Proposition 115, we proceed on the basis of that assumption.
(2) Mena argues the trial court abused its discretion by denying the motion. We conclude, even assuming the trial court erred by denying the motion, Mena is not entitled to reversal of his conviction. First, we conclude a defendant's right to relief is waived if he does not challenge an adverse ruling by a timely pretrial petition for a peremptory writ. The Evans court expressly conditioned the right to seek a lineup on a timely request (Evans, supra, 11 Cal.3d at p. 626), and enforced the newly minted right in the case before it by issuing a peremptory writ compelling the trial court to hold a lineup before trial (id. at p. 627). The Supreme Court in People v. Baines (1981) 30 Cal.3d 143 [177 Cal.Rptr. 861, 635 P.2d 455] explicitly recognized the "value of a pretrial lineup is substantially diminished once a preliminary *1452 examination has been conducted and a direct confrontation between a defendant and his accusers has occurred." (Id. at p. 148.) When a trial court denies a request for a pretrial lineup, and the defendant elects not to challenge the ruling by writ, the delay effectively thwarts the purposes served by the right conferred under Evans and prevents a court reviewing the claim on appeal from the conviction from fashioning any appropriate relief even if it finds error. (Cf. Reid v. Balter (1993) 14 Cal.App.4th 1186, 1195-1196 [18 Cal.Rptr.2d 287] [because failure to challenge ruling by writ petition thwarted purposes served by statute, appellant barred from raising issue on appeal from adverse judgment].) If a defendant forgoes writ review of the lineup ruling, and instead undergoes a preliminary hearing and trial, the witness will have ordinarily viewed the defendant at the preliminary hearing and/or at trial. Even if an appellate court reversed and ordered a lineup on remand, the results of that lineup would have no evidentiary value: a positive identification would be tainted by the fact the witness saw the defendant at trial, and a negative identification would be tainted by the lengthy passage of time during which fading memories and changing appearances would operate. Mena concedes here that reversal coupled with an order to conduct a lineup on remand is not appropriate because it would have "no evidentiary value" in a later trial.
We recognize several cases have discussed alleged error in denying an Evans lineup on appeal from the judgment of conviction. (See People v. Sullivan (2007) 151 Cal.App.4th 524, 560-561 [59 Cal.Rptr.3d 876]; People v. Farnam, supra, 28 Cal.4th at pp. 183-184; People v. Williams (1997) 16 Cal.4th 153, 235-236 [66 Cal.Rptr.2d 123, 940 P.2d 710].) However, because those cases found the ruling was not error, they had no occasion to consider whether a ruling that was error would be waived if not raised by writ. Because of the uniquely ephemeral nature of the rights conferred by Evans, we conclude the requirement of timely pursuit of a lineup includes timely review of an adverse ruling by writ proceedings, and failure to pursue writ relief waives the claim of error.
Even assuming the claim of error is preserved and the trial court abused its discretion when it denied the motion, we conclude any alleged error was harmless beyond a reasonable doubt. Mena asserts the erroneous ruling deprived him of evidence that Jesus would not have identified him in a lineup conducted in June of 2007 (near the time of Mena's Evans motion), and we should reverse and instruct the jury on remand to that effect. However, Jesus testified at trial that he did not recognize Mena as one of his attackers, and he had not been able to identify Mena as one of his attackers in June of 2007 when he saw Mena at the preliminary hearing. Thus, the jury convicted Mena despite having the benefit of testimony substantially identical to the evidence Mena claims he was deprived of by the erroneous ruling on his Evans motion. Under these unique circumstances, we conclude any deprivation *1453 resulting from denial of Mena's request for a pretrial lineup was harmless beyond a reasonable doubt.

B. The Probation Conditions

Mena argues the court imposed two "nonassociation" conditions of probation[2] that violate due process for vagueness and overbreadth because there is no requirement Mena have knowledge the persons with whom he may not associate are members of the specified gang or have weapons in their possession. Although the People concede one of the conditions (condition 12(f)) must be modified to insert a knowledge provision, they argue condition 12(b) is proper because it requires that Mena "[n]ot associate with any known gang members or persons who are associated with the East San Diego gang," and therefore contains the requisite knowledge limitation.
(3) Mena argues, and the People in effect concede, a probation condition that bars the probationer from associating with persons possessing specified characteristics cannot impose strict liability on the probationer. Instead, the condition must include an "express requirement of knowledge" by "explicitly direct[ing] the probationer not to associate with anyone `known to [possess the specified characteristic].'" (In re Sheena K. (2007) 40 Cal.4th 875, 891, 892 [55 Cal.Rptr.3d 716, 153 P.3d 282], italics added; accord, People v. Turner (2007) 155 Cal.App.4th 1432, 1436 [66 Cal.Rptr.3d 803].)
The People assert condition 12(b) satisfies Sheena K. and obviates any vagueness or overbreadth concerns because it requires that Mena "[n]ot associate with any known gang members or persons who are associated with the East San Diego gang" (italics added), thereby supplying the requisite scienter requirement. However, we agree with Mena that condition 12(b) precludes Mena from associating with two distinct classes of persons: "gang members" and "persons who are associated with the East San Diego gang." The knowledge requirement may apply to the former group, but grammatically does not apply to the latter group. We are empowered "to modify a probation condition to render [it] constitutional" (People v. Turner, supra, 155 Cal.App.4th at p. 1436), and we therefore modify condition 12(b) to read: "Not to associate with persons he knows to be gang members or he knows to be associated with the East San Diego gang." As so modified, condition 12(b) does not violate due process.

*1454 DISPOSITION
The order of probation is modified as follows: probation condition 12(b) is modified to read: "Not to associate with persons he knows are gang members or he knows are associated with the East San Diego gang"; and, probation condition 12(f) is modified to read: "Not to associate with persons he knows to have firearms or weapons in their possession." The trial court is directed to forward a copy of the corrected order to the probation authorities. As so modified, the judgment is affirmed.
Nares, Acting P. J., and Aaron, J., concurred.
NOTES
[1] All further statutory references are to the Penal Code unless otherwise specified.
[2] Condition 12(b) requires Mena "[n]ot associate with any known gang members or persons who are associated with the East San Diego gang," and condition 12(f) requires Mena "[n]ot associate with any persons who have firearms or weapons in their possession."