Filed 8/9/13  P. v. Williams CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| THE PEOPLE, | B240657 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. SA073548) |
| v. | |
| GARY WAYNE WILLIAMS, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Cynthia Rayvis, Judge.  Modified in part, affirmed in part and remanded with directions.

Linda Acaldo, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Margaret E. Mazwell, Yun K. Lee and Thomas C. Hsieh, Deputy Attorneys General, for Plaintiff and Respondent.

## I.  INTRODUCTION

A jury convicted defendant, Gary Wayne Williams, of two counts of first degree burglary (Pen. Code,[1] § 459) and three counts of first degree home invasion robbery (§ 211).  The jury further found there was another person present at the time of the burglaries and a principal was armed with a handgun in the commission of each offense. (§§ 460, subd. (a), 667.5, subd. (c)(21), 12022, subd. (a)(1).).  The trial court found defendant had two prior serious or violent felony convictions (§§ 667, subds. (a)(1), (b)-(i), 1170.12) and had served prior separate prison terms (§ 667.5, subd. (b)).  Defendant was sentenced to 24 years in state prison.  We modify the judgment with respect to assessments and custody credit.  We remand for an ability to pay hearing with respect to the local crime prevention programs fine (§ 1202.5, subd. (a)) and applicable penalties.  We affirm the judgment in all other respects.

## II.  THE EVIDENCE

On January 29, 2010, near midnight, Jeffrey Glassberg and Jason Zelazny were at home in their living room in Santa Monica.  A friend, Zachary Rittner, was visiting. Three men broke into the residence by kicking in the front door.  They ordered the victims to keep their heads down.  One of the intruders, later identified as Kenneth Kashey, was armed with a handgun.  A second robber was subsequently identified as Richard Muse.  None of the victims visually identified defendant as one of the three robbers.  However, at trial, Mr. Zelazny identified defendant.  The identification was based upon defendant's distinct voice.  The robbers took marijuana and cash belonging to Mr. Zelazny, some video games, and the victims' wallets and cellular telephones.

---

[1]     All further statutory references are to the Penal Code except where otherwise noted.

There was circumstantial evidence—cellular telephone records—that at times corresponding to the robbery, repeated calls were made between: defendant's telephone; Mr. Kashey's telephone; and a third number listed as a contact in defendant's telephone. In addition, evidence from a cellular telephone tower was introduced. The evidence indicated defendant's cellular telephone traveled to Santa Monica and back at times also corresponding to the robbery.

## III. DISCUSSION

### A. The Standard of Review

On appeal, defendant argues it was error to deny his new trial motion in which he asserted federal constitutional error. In his new trial motion, defendant argued: his alleged co-perpetrators should not have testified before the jury; the trial court should not have required defendant to speak in front of the jury; and it was error to give an aiding and abetting instruction. On appeal, our review is for an abuse of discretion. (*People v. Homick* (2012) 55 Cal.4th 816, 894; *People v. Hoyos* (2007) 41 Cal.4th 872, 917, fn. 27, abrogated on another point in *People v. McKinnon* (2011) 52 Cal.4th 610, 636-643.) The abuse of discretion standard of review extends to cases in which constitutional claims are raised on appeal from a new trial denial. (*People v. Hoyos, supra,* 41 Cal.4th at p. 917, fn. 27.)

### B. The In-Court Voice Identification

At trial, Mr. Zelazny testified that during the robbery one of the perpetrators asked, "Who is the kingpin around here?" Mr. Zelazny further testified, "I know for sure [the speaker] was not the gunman based on the voice." The prosecutor subsequently asked Mr. Zelazny whether any of the intruders were in the courtroom. Mr. Zelazny responded: "I don't recognize anybody in this courtroom today. But if I heard the same

3

voice, I might be able to recognize that." The prosecutor then requested a voice demonstration, "Your Honor, at this time I'd ask that the defendant give a voice demonstration of a phrase that the witness has testified about during the course of the events." Over defendant's objection, the trial court subsequently ordered defendant to stand and say "Who is the kingpin around here?" before the jury. After defendant complied, Mr. Zelazny testified, "That voice sounds familiar." He was asked, "Are you able to say whether or not it is one of the voices of one of the robbers?" Mr. Zelazny responded, "It sounds like the same, yeah, person." The prosecutor inquired, "Now, are you sure about that?" Mr. Zelazny responded, "Yes." In his defense, defendant presented opinion-based testimony as to the reliability of voice identifications. On appeal, defendant suggests the prosecution withheld the information that Mr. Zelazny could identify defendant's voice. Defendant further argues, as he did in his new trial motion, that the prosecution had a duty to conduct a pretrial voice identification lineup prior to the in-court voice identification. We find no abuse of discretion.

We first consider defendant's suggestion he was "ambushed" by the evidence concerning his voice. Defendant concedes his voice was "extremely" distinctive. There was no indication prior to trial, in the police reports or the victims' statements, that one of the robbers had spoken in a distinctive voice. As the Court of Appeal for the Fourth Appellate District observed in *People v. Bell* (1998) 61 Cal.App.4th 282, 291: "While we prohibit trial by ambush, surprises may still sometimes happen at trial. Here, there is no evidence in the record from which we could reasonably infer the prosecutor knew [the witness] would be able to identify [the defendant] at trial. Thus, there is nothing patently erroneous about the trial court's ruling [refusing to exclude the testimony]." Here, there is no showing the prosecutor had advance knowledge Mr. Zelazny could identify defendant's voice. The trial court could reasonably conclude the prosecution had not expected, contemplated nor intended to ambush the defense.

We turn to the pretrial voice identification lineup claim. As a matter of due process, a trial court has broad discretion to require the prosecution to conduct a pretrial voice identification lineup when: eyewitness identification is a material issue; there is a

4

reasonable likelihood of mistaken identity which a voice lineup would tend to resolve; and the defendant has made a timely motion to compel a lineup. (*People v. Mena* (2012) 54 Cal.4th 146, 148, 151-152; *People v. Baines* (1981) 30 Cal.3d 143, 147-148; *Evans v. Superior Court* (1974) 11 Cal.3d 617, 625; *Garcia v. Superior Court* (1991) 1 Cal.App.4th 979, 988; *People v. Vallez* (1978) 80 Cal.App.3d 46, 56.) The source of this due process right is the California not the United States Constitution. (*People v. Mena, supra,* 54 Cal.4th at pp. 148, 161.) The trial court's broad discretion in ruling on a motion for a lineup includes the discretion to deny such a motion when it is not timely made. (*People v. Mena, supra,* 54 Cal.4th at p. 154; *Evans v. Superior Court, supra,* 11 Cal.3d at p. 626; *Garcia v. Superior Court, supra,* 1 Cal.App.4th at p. 988; *People v. Vallez, supra,* 80 Cal.App.3d at p. 56.) Here, defendant never requested a pretrial voice identification lineup. Defendant cites no authority for the proposition the prosecution had a duty to conduct a pretrial voice identification lineup absent his timely request. Further, defendant has not established there was a reasonable likelihood of mistaken identity which a voice lineup would have tended to resolve. Defendant admits his voice was "extremely" distinctive. It would be pure speculation to suggest Mr. Zelazny might have failed to identify defendant's distinctive voice in a pretrial voice identification lineup. (*People v. Mena, supra,* 54 Cal.4th at p. 162.) In any event, there is no showing the prosecution should have forseen the need for a pretrial voice identification lineup.

We also find no prejudice to defendant. The absence of a pretrial voice lineup does not as a matter of law render an in-court voice identification impermissibly suggestive or prejudicial. (See *People v. Rodrigues* (1994) 8 Cal.4th 1060, 1155; see also *Evans v. Superior Court, supra,* 11 Cal.3d at p. 625.) Defendant had the opportunity to cross-examine Mr. Zelazny about the reliability of the in-court voice identification. Defendant had the right to argue the circumstances of Mr. Zelazny's in-court voice identification to the jury. It was for the jury to decide the reliability of the identification. (*People v. Sims* (1976) 64 Cal.App.3d 544, 552-553; *People v. Avina* (1968) 264 Cal.App.2d 143, 147; see *People v. Mohamed* (2011) 201 Cal. App.4th 515, 522; *People v. Fairley* (1982) 135 Cal.App.3d 182, 186-187.) The trial court did not abuse its

5

discretion in denying defendant's new trial motion on grounds it was error to allow the in-court voice identification absent a pretrial voice lineup.

## C. The CoPerpetrators' Stricken Testimony

In the new trial motion, defendant argued the trial court should have disallowed testimony by his coperpetrators, Mr. Kashey and Mr. Muse. Defendant asserted, "[T]he Court encouraged the jury to speculate and permitted the inference that the former codefendants had only an intent to assist the defendant by their display of defiance [in refusing to testify]." Defendant renews this argument on appeal. We find no abuse of discretion in denying defendant's new trial motion on this ground. Moreover, any alleged error was harmless.

Both Mr. Kashey and Mr. Muse pled guilty to the robbery. At the time of trial, both men were serving state prison sentences. During Evidence Code section 402 hearings, Mr. Muse and Mr. Kashey answered preliminary questions, but then refused to testify in any detail about the robbery. Over defense objection, both witnesses testified before the jury. They again answered some questions but refused to answer others. Their testimony was subsequently struck from the record. The jury was admonished not to consider Mr. Kashey's or Mr. Muse's testimony.

Mr. Kashey testified that in January 2010, he lived with his mother, Nancy Parker, at 3297 North Pershing Avenue in San Bernardino. At that time Mr. Kashey had a cellular telephone. He refused to say whether his cellular telephone number was 909-915-7404. Mr. Muse was Mr. Kashey's neighbor and good friend. Mr. Kashey was unfamiliar with telephone number 909-534-7373. Mr. Kashey recognized Mr. Muse's telephone numbers. Mr. Muse's home telephone number was 883-9403. Mr. Muse's cellular telephone number was 909-835-8857. When Mr. Kashey was arrested in February 2010, the police took a cellular telephone from him. Mr. Kashey described the cellular telephone: "Gray. Beat up. It was old. Time for a new one. It was busted." Mr. Kashey had been in possession of the cellular telephone for about two years but did

not remember it's number. Mr. Kashey refused to say whether he had previously testified about a telephone number he used to have. Mr. Kashey knew a person by the name "Garey." That person was a neighbor of Mr. Kashey. Mr. Kashey refused to say whether "Garey" was in the courtroom. The telephone numbers for "Garey" were 903-286-1119 and 909-881-1474. Mr. Kashey refused to testify concerning the events of January 29, 2010. The trial court subsequently instructed the jury: "Ladies and Gentlemen, Kenneth Kashey's testimony is stricken entirely from the record. You are not to consider his testimony for any purpose whatsoever. You are to disregard his entire testimony as if he had never testified or been here."

Mr. Muse testified that in January 2010 he lived at 3344 Pershing Avenue in San Bernardino. Mr. Kashey was Mr. Muse's neighbor and good friend. Mr. Kashey lived at 3297 North Pershing Avenue with his mother, Nancy Parker. Mr. Kashey's telephone number was 909-915-7404. His newest telephone number was 909-534-7373. On January 29, 2010, Mr. Muse and Mr. Kashey went to Santa Monica. No one else went with them. They "[w]ent robbing" and entered a house. Mr. Kashey kicked in the door. He had a gun. Mr. Muse saw Mr. Kashey go into the house. Mr. Muse testified, "I step[ped] a foot [inside the residence] and then I came back out." Mr. Muse did not see what Mr. Kashey did inside the house. Mr. Muse was arrested in early February, 2010.

Mr. Muse spoke for a short time to Detective Maury Sumlin. Mr. Muse said that on January 29, 2010, he went to a party. The party was given by one of Mr. Kashey's co-workers. Later, Mr. Kashey and Mr. Muse went to Santa Monica. Mr. Muse would not say whether Detective Sumlin was told they were accompanied by the person identified only as Gary. Mr. Muse would not answer questions about physical evidence that tended to incriminate him, specifically whether: he jumped over a fence at the Santa Monica house; he had a cut on his finger, or he was wearing a "USC" sweatshirt which refers to the University of Southern California. The trial court struck Mr. Muse's testimony. The trial court instructed the jury: "Ladies and gentlemen, the witness's testimony is stricken from the record. You're not to consider his testimony for any reason at this time unless

7

or until you get further instructions from the Court. It is stricken entirely from the record."

After the parties rested, and before argument to the jury, the trial court further instructed: "Kenneth Kashey and Richard Muse were called to testify as witnesses during this trial. Their testimony was stricken from the record. You are not to consider their testimony for any purpose. You may consider the witness[es]'s names, physical appearances, and voices." The prosecution was not permitted to argue that Mr. Kashey and Mr. Muse refused to testify in order to protect defendant. Defendant has not raised any issue on appeal with respect to the trial court's instruction, "You may consider the witness[es]'s names, physical appearances, and voices."

Because Mr. Kashey and Mr. Muse had both pleaded guilty and the time to appeal had expired, the trial court correctly ruled neither defendant retained a Fifth Amendment privilege not to testify. (*People v. Lopez* (1999) 71 Cal.App.4th 1550, 1554; *People v. Fonseca* (1995) 36 Cal.App.4th 631, 635, 637.) Further, because Mr. Kashey and Mr. Muse had no Fifth Amendment privilege to remain silent, and even though their reluctance to testify was known, the prosecution was entitled to call them as witnesses at trial. (*People v. Morgain* (2009) 177 Cal.App.4th 454, 467-468; *People v. Sisneros* (2009) 174 Cal.App.4th 142, 151; *People v. Lopez, supra,* 71 Cal.App.4th at p. 1554; *People v. Shipe* (1975) 49 Cal.App.3d 343, 349.) Moreover, a jury is entitled to draw negative inferences from such a witness's refusal to testify. (*People v. Lopez, supra,* 71 Cal.App.4th at p. 1554; see *People v. Morgain, supra,* 177 Cal.App.4th at pp. 468-469.) Here, however, the jury was instructed to disregard the testimony in its entirety.

Defendant argues *People v. Lopez, supra,* 71 Cal.App.4th 1550, and *People v. Sisneros, supra,* 174 Cal.App.4th 142, on which the prosecution relied, are distinguishable. Defendant reasons that in both *Lopez* and *Sisneros,* the jury was allowed to consider the reluctant witness's testimony because it was relevant as opinion testimony concerning a gang allegation. Defendant misperceives the points for which the prosecution cited *Lopez* and *Sisneros.* In any event, here, the trial court did not find Mr.

8

Kashey's or Mr. Muse's testimony relevant. The trial court struck the testimony. The jury was not allowed to consider the testimony.

In support of his position, defendant cites *People v. Shipe, supra,* 49 Cal.App.3d at pages 345-355. Defendant's reliance on *Shipe* is misplaced. In *Shipe,* two accessories to a murder pled guilty. The accessories testified at the defendant's murder trial. Each answered preliminary inquiries but refused to answer questions about the night of or the events culminating in the murder. In *Shipe,* unlike the present case, after the witnesses refused to testify, the prosecutor asked each accessory multiple "blatantly leading," "flagrantly suggestive" questions. The questions were prefaced by, "Isn't it true" or words to that effect. (*Id.* at pp. 346-349, 351.) Through these questions, the prosecutor created distinct and "almost irrefutable" inferences: that the defendant was the murderer; that the two accessories had truthfully so confessed to the police; and that the accessories had described the murder in detail. (*Id.* at pp. 349-350.) The defendant argued the questioning violated his confrontation right under the federal constitution. The Court of Appeal for the Fifth Appellate District agreed. "[T]he constitutional error committed in this case was not in calling the witnesses and forcing them to claim the privilege against self-incrimination; the error was in the manner in which the witnesses were questioned." (*Id.* at p. 351.) Here, there was no such leading, suggestive questioning. Moreover, in the present case, unlike *Shipe,* the jury was instructed to disregard Mr. Kashey's and Mr. Muse's testimony.

Even if the trial court had erred in allowing the testimony, the error was harmless under any standard. (*People v. Watson* (1956) 46 Cal.2d 818, 836; *Chapman v. California* (1967) 386 U.S. 18, 24.) First, the prosecutor did not ask Mr. Kashey or Mr. Muse extensive questions supporting inferences prejudicial to defendant. Second, the jury was instructed to disregard the stricken testimony. (*People v. Abel* (2012) 53 Cal.4th 891, 925-926 [any possible prejudice dispelled by admonition to jury to disregard testimony]; *People v. Mitchell* (2005) 131 Cal.App.4th 1210, 1228 & fn. 46 [presumption of prejudice dispelled by admonition to disregard improper information.] Under well-established authority, we presume the jury followed the instruction to disregard Mr.

9

Kashey's and Mr. Muse's testimony. (*People v. Homick, supra,* 55 Cal.4th at p. 879; *People v. Cox* (2003) 30 Cal.4th 916, 961, disapproved on another point in *People v. Doolin* (2009) 45 Cal.4th 390, 418; *People v. Burgener* (2003) 29 Cal.4th 833, 869-870.) As the Court of Appeal has held, "'The assumption that jurors are able to follow the court's instructions fully applies when rights guaranteed by the Confrontation Clause are at issue.'" (*People v Morgain, supra,* 177 Cal.App.4th at p. 465, citing *Tennessee v. Street* (1985) 471 U.S. 409, 415, fn. 6.) Third, the prosecutor was not permitted to argue the stricken testimony supported any inferences averse to defendant. Fourth, substantial evidence, albeit primarily circumstantial, connected defendant to the robbery. Defendant's cellular telephone number was in repeated contact with Mr. Kashey's cellular telephone number in the hours preceding and following the robbery. In addition, calls and attempted calls from defendant's cellular telephone showed travel from San Bernardino to Santa Monica and back at times corresponding to the robbery. In addition, Mr. Zelazny identified defendant's distinct voice during the trial. There was no abuse of discretion in denying defendant a new trial on this ground.

## D. Instructional Error

The trial court instructed the jury on aiding and abetting principles. During deliberations, the jury asked the following question: "We, the jury in the above entitled action, request the following: [¶] A clarification on the charges. [¶] If we believe that the defendant *was involved* (had *knowledge* before and after) *and abetted* the crime, even if we do not believe that it was proved beyond a reasonable doubt that he was *in the house*[,] [d]oes that still satisfy the charge?" (Italics added.) The trial court proposed to reinstruct the jury on aiding and abetting, CALCRIM No. 401, adding the following: "If you conclude that defendant was present at the scene of the crime or failed to prevent the crime, you may consider that fact in determining whether the defendant was an aider and abettor. However, the fact that a person is present at the scene of a crime or fails to prevent the crime does not, by itself, make him or her an aider and abettor." Defense

counsel objected that mere knowledge, before or after the crime, is not enough. In his new trial motion, defendant reasserted that mere knowledge of another's criminal purpose and failure to prevent the crime does not amount to aiding and abetting.

On appeal, defendant argues for the first time that it was error to instruct the jury on aiding and abetting principles. Defendant reasons the prosecution did not rely on an aiding and abetting theory and there was no evidence to support it. We agree with the Attorney General that defendant forfeited this argument by failing to raise it in the trial court. Defendant has not shown he objected to the aiding and abetting instructions in the first instance. And his argument in response to the jury inquiry and in his new trial motion was limited to the insufficiency of mere knowledge to support an aiding and abetting conviction. Defendant may not raise his current argument for the first time on appeal. (*People v. Mejia* (2012) 211 Cal.App.4th 586, 624; *People v. Loza* (2012) 207 Cal.App.4th 332, 349-350.)

On the merits, defendant's argument rests on inaccuracies. Defendant argues, for example, "It was only when the jury indicated that it had not concluded that [defendant] was in the house with [Mr.] Muse and [Mr.] Kashey that the court added the language that permitted the jury to convict on an aiding and abetting theory." In fact, the jury had been instructed on an aiding and abetting theory of liability from the beginning. Defendant also argues, "Nothing established that [defendant] was present at the scene of the robbery, as the jury obviously concluded, nor did any activity of [defendant's] establish that he even knew what [Mr.] Muse and [Mr.] Kashey planned." There was evidence defendant had been in repeated communication with Mr. Kasey and a second individual and had traveled to and from Santa Monica at times corresponding to the robbery. There was also evidence defendant spoke to the victims inside the residence at the time of the robbery. It is also inaccurate to assert that, "The [jury's] note said nothing about [defendant's] having assisted or supplemented the efforts of [Mr.] Muse and [Mr.] Kashey and/or incited or encouraged [Mr.] Muse and [Mr.] Kashey." The jury had been instructed, "Someone aids and abets a crime if he or she knows of the perpetrator's unlawful purpose and he or she specifically intends to, and does in fact, aid, facilitate,

11

promote, encourage, or instigate the perpetrator's commission of that crime." In its note, the jury prefaced its question by the following, "If we believe that the defendant was involved (had knowledge before and after) *and abetted the crime . . . ."* The trial court could reasonably infer the jury's note meant it believed defendant had assisted, supplemented, incited or encouraged his co-perpetrators.

Turning to the point raised in defendant's new trial motion—that mere knowledge is insufficient to convict for aiding and abetting—the jury was so instructed. In addition to the instruction referenced above, and pursuant to CALCRIM No. 1702, the jury was instructed, "To be guilty of burglary as an aider and abettor, the defendant must have known of the perpetrator's unlawful purpose and must have formed the intent to aid, facilitate, promote, instigate, or encourage commission of the burglary before the perpetrator finally left the structure." The jury was also instructed with CALCRIM No. 1603 "To be guilty of robbery as an aider and abettor, the defendant must have formed the intent to aid and abet the commission of the robbery before or while a perpetrator carried away the property to a place of temporary safety." As noted, the jury is presumed to have followed the instructions. (*People v. Coffman* (2004) 34 Cal.4th 1, 73; *People v. Lewis* (2001) 26 Cal.4th 334, 390.) Moreover, as our Supreme Court held in *Lewis,* "'Jurors are presumed to be intelligent, capable of understanding instructions and applying them to the facts of the case.'" (*People v. Lewis, supra,* 26 Cal.4th at p. 390, citing *Conservatorship of Early* (1983) 35 Cal.3d 244, 253.) Hence the jury understood that mere knowledge of the perpetrator's criminal purpose did not suffice to convict defendant on a aiding and abetting theory. And, the issue of defendant's identification was closer than in many cases. But once the jury concluded defendant was one of the three robbers, the aiding and abetting issue was not close at all. The trial court did not abuse its discretion in denying defendant's new trial motion on instructional error grounds.

E.  Sentencing


1.  The court facilities and court operations assessments


The trial court imposed a $30 court facilities assessment (Gov. Code, § 70373, subd. (a)(1)) and a $40 court operations assessment (§ 1465.8, subd. (a)(1)).  However, those mandatory assessments should have been imposed as to each count.  (*People v. Castillo* (2010) 182 Cal.App.4th 1410, 1415, fn. 3 [court facilities assessment]; *People v. Roa* (2009) 171 Cal.App.4th 1175, 1181 [court operations assessment]; see *People v. Alford* (2007) 42 Cal.4th 749, 758, fn. 6.)  The judgment must be modified to so provide.  The abstract of judgment is correct with respect to the court operations assessment but must be amended to reflect a $150 in court facilities assessments.


2.  The local crime prevention programs fine


The trial court imposed a $10 local crime prevention programs fine.  (§ 1202.5, subd. (a).)  However, the trial court failed to impose mandatory penalty assessments on the fine.  Because defendant committed the present offense on January 29, 2010, the section 1202.5, subdivision (a) fine was subject to:  a $10 section 1464, subdivision (a)(1) state penalty; a $7 Government Code section 76000, subdivision (a)(1) county penalty; a $2 Government Code section 76000.5, subdivision (a)(1) emergency medical services penalty; a $2 section 1465.7, subdivision (a) state surcharge; a $3 state court construction penalty under former Government Code section 70372, subdivision (a)(1) (Stats. 2009 (2009-2010 2nd Ex. Sess.) ch. 10, § 5, eff. May 21, 2009-Oct. 18, 2010; *People v. McCoy* (2007) 156 Cal.App.4th 1246, 1254.); a $1 Government Code section 76104.6, subdivision (a)(1) deoxyribonucleic acid penalty; and a $1 state-only deoxyribonucleic acid penalty under former Government Code section 76104.7, subdivision (a) (Stats. 2007, ch. 302, §  8, eff. Jan. 1, 2008-June 9, 2010).  Thus, the total sum due is $36 when, as here, the trial court imposes the full section 1202.5, subdivision (a) $10 fine plus

13

penalties and a surcharge in Los Angeles County. (*People v. Knightbent* (2010) 186 Cal.App.4th 1105, 1109; *People v. Castellanos* (2009) 175 Cal.App.4th 1524, 1528-1530.) The fine is subject to an ability to pay requirement. (§ 1202.5, subd. (a).) Therefore, upon remittitur issuance, the trial court must conduct an ability to pay hearing as to the fine together with the penalty assessments. (*People v. Castellanos, supra,* 175 Cal.App.4th at p. 1531; but see *People v. Knightbent, supra,* 186 Cal.App.4th at pp. 1112–1113 [no hearing required where the increase in the total sum is minimal and the defendant raised no objection to the $10 fine].) The trial court may impose a lesser fine or none at all. (*People v. Castellanos, supra,* 175 Cal.App.4th at p. 1531.)

### 3. Presentence custody credit

The trial court gave defendant credit for 332 days in presentence custody plus 49 days of conduct credit for a total of 381 days. However, defendant was arrested on February 5, 2010, released on bail on February 6, 2010, remanded to custody on June 16, 2011, and sentenced on April 17, 2012. Therefore, he was in presentence custody for a total of only 309 days, and was entitled to 46 days of conduct credit, for a total of 355 days. (See *People v. Rajanayagam* (2012) 211 Cal.App.4th 42, 48 [defendant receives credit for all days of custody including day of arrest and day of sentencing]; *People v. Morgain, supra,* 177 Cal.App.4th at p. 469 [same].)

### IV.  DISPOSITION

The judgment is modified to impose a $30 court facilities assessment (Gov. Code, § 70373, subd. (a)(1)) and a $40 court operations assessment (Pen. Code, § 1465.8, subd. (a)(1)) as to each count. The judgment is further modified to award defendant credit for 309 days in presentence custody plus 46 days of conduct credit for a total of 355 days. Upon remittitur issuance, the trial court must conduct an ability to pay hearing as to the local crime prevention programs fine (Pen. Code, § 1202.5, subd. (a)) and applicable penalties. Following the hearing, the superior court clerk must prepare an amended

14

abstract of judgment and deliver a copy to the Department of Corrections and Rehabilitation. In all other respects, the judgment is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS


TURNER, P.J.


We concur:


MOSK, J.


KRIEGLER, J.